Paul W. TILLOTSON, Special Agent, Internal Revenue Service, Plaintiff-Appellee,

v.

Jackson L. BOUGHNER, Defendant-Appellant.

No. 15036.

United States Court of Appeals
Seventh Circuit.

July 13, 1965.

William A. Barnett, Chicago, Ill., Crowley, Barnett & Goschi, Chicago, Ill., of counsel, for defendant-appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Tax Division, Burton Berkley, Atty., U. S. Department of Justice, Washington, D. C., Edward V. Hanrahan, U. S. Atty., Joseph M. Howard, Washington, D. C., John B. Jones, Jr., Acting Asst. Atty. Gen., Lee A. Jackson, Attorney, Department of Justice, Washington, D. C., of counsel, for plaintiff-appellee.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from an order of the District Court holding defendant Boughner in civil contempt for his refusal to obey an order of the District Court dated February 12, 1965.

Defendant Boughner is an attorney at law specializing in federal tax matters. He was retained for a confidential conference by another attorney, and through that attorney, by an unnamed taxpayer. Boughner was asked not to divulge the

name of the attorney. On July 27, 1961, defendant Boughner delivered to the Internal Revenue Service a cashier's check for $215,499.95 on behalf of the unnamed taxpayer.

On August 27, 1963, Special Agent Tillotson petitioned the United States District Court to enforce an Internal Revenue summons served on defendant Boughner. On December 16, 1963, the District Court entered an order requiring defendant "to give testimony relating to the tax liability of John Doe, the unknown taxpayer, or taxpayers, on whose behalf Jackson L. Boughner delivered to the Internal Revenue Service a cashier's check for $215,499.95, dated July 27, 1961, and drawn on the LaSalle National Bank, Chicago, Illinois." The validity of this order was upheld by this Court, 333 F.2d 515. Defendant petitioned for certiorari, but certiorari was denied, 379 U.S. 913, 85 S.Ct. 260, 13 L.Ed.2d 184.

On December 8, 1964, defendant appeared before plaintiff as required by the order of December 16, 1963. He admitted he was the person who, on July 27, 1961, delivered a cashier's check for $215,499.95 to the Internal Revenue Service. He refused to name the person who brought the matter to him or any other question which might indirectly tend to reveal this name. Defendant asserted the attorney-client privilege.

On January 22, 1965, the United States Attorney filed a motion to advise the Court that its order of December 16, 1963 had not been obeyed, and to request the entry of a rule to show cause why the Court should not enter appropriate sanctions against the defendant.

Defendant appeared on February 12, 1965, but denied he was in disobedience of the order of December 16, 1963, except as to those questions to which he deemed the attorney-client privilege applied. The District Judge stated he thought defendant had waived the right to claim the attorney-client privilege, but that he would not decide the case on that point. He then issued an order for defendant to appear on that date at 2

p. m. before Special Agent Charles Schulze in a witness room in the United States Courthouse. Later that day, the Court was advised by an Assistant United States Attorney that defendant had refused to respond to questions, asserting the attorney-client privilege. The Court then entered an order finding defendant guilty of civil contempt for refusal to obey the order of February 12, 1965, and directing him to personally pay the sum of $100.00 each day until such time as he should purge himself of contempt by obeying the order.

Defendant's first claim is that the proceeding below deprived him of his right to due process under the law. Defendant claims the Court, in reality, was proceeding under the summary provisions of Rule 42(a), Federal Rules of Criminal Procedure. Defendant points out there was no contempt committed in the presence of the Court, hence that he could only be proceeded against by notice and a hearing with allowance for reasonable time to prepare his defense.

█ The difference between civil and criminal contempt is well established. A commitment or fine for civil contempt is to coerce the defendant. The sentence for a criminal contempt is not intended to coerce, but rather as a punishment to vindicate the Court's authority. Duell v. Duell, 85 U.S.App.D.C. 78, 178 F.2d 683, 685, 14 A.L.R.2d 560.

█ Defendant, himself an attorney, was also represented by counsel on February 12, 1965. Neither objected to the hearing being held on that date. In fact, counsel was asked by the Court if there were any other reasons why defendant should not be held in contempt, and he replied there were none other than the attorney-client privilege. We hold the defendant was not deprived of his right to due process.

On this appeal, plaintiff argues that defendant could have raised the question of attorney-client privilege in the prior litigation which came before this Court, and that not having done so, he has

waived the right to claim such privilege.

On January 15, 1963, the defendant appeared pursuant to the summons and identified himself. He declined to state his profession or to answer this question: "Are you the party who, on or about July 27, 1961, either submitted or had submitted a cashier's check in the amount of $215,499.95 to the Internal Revenue Service, in payment of a taxpayer whose name we do not know?"

█ Obviously, neither defendant's profession nor the undisputed fact that he had submitted the cashier's check could possibly have involved the attorney-client privilege. The hearing was then terminated by plaintiff who had asked no question to which any attorney-client privilege could have been asserted. Therefore, the only issue before the trial court and before this Court on the previous appeal was the validity of the summons. Our decision was limited to that question. Note in particular Judge Knoch's concurring opinion, 333 F.2d at page 517.

█ Another reason why the privilege has not been waived is that the privilege is that of the client. Here, the client is not a party to this suit. As stated in 8 Wigmore, Evidence, § 2321—"Under the original theory of the privilege, it was the attorney's, not the client's (§ 2290, supra). But under the modern theory (§ 2291, supra), it is plainly the client's, not the attorney's. This is now never disputed."

In Schwimmer v. United States, 8 Cir., 232 F.2d 855, 863, the Court said—"The privilege thus is one that exists for the benefit of the client and not the attorney. * * * But the attorney has the duty, upon any attempt to require him to testify or produce documents within the confidence, to make assertion of the privilege, not merely for the benefit of the client, but also as a matter of professional responsibility * * *."

We hold the defendant Boughner is not foreclosed by operation of the doctrines of waiver, res judicata or otherwise, from raising, on this appeal, the attorney-client privilege.

█ We now turn to consider whether under the peculiar facts of this case, the attorney-client privilege includes, within its scope, the identity of the client.

There is little doubt but that defendant Boughner planned the transaction in the instant case, including the purchase of the cashier's check, in light of the decision of Baird v. Koerner, 9 Cir., 279 F.2d 623, 95 A.L.R.2d 303 (1960). Baird was a tax lawyer who, like Boughner, had for years been an attorney for the Internal Revenue Service. Baird conferred with certain accountants concerning the income tax of an individual taxpayer. The accountants determined the taxpayer's returns were incorrect and his taxes understated. No investigation was then being made by the government. Taxpayer's attorney came to Baird's office and without disclosing the identity of the taxpayer, delivered to Baird $12,706.85 which had previously been determined as the amount of tax due, plus interest. Baird transmitted to the District Director of Internal Revenue Service at Baltimore a cashier's check for $12,706.85 with a letter very similar to the one used by Boughner in the instant case.

The Court of Appeals for the Ninth Circuit reversed the District Court insofar as that Court had ordered Baird to reveal any information regarding the persons who had employed him. The Court specifically held that an attorney cannot be compelled to divulge the names of clients who employ him to voluntarily mail sums of money to the government in payment of undetermined income taxes, unsued upon, and as to which no government audit or investigation is pending.

The Court stated that the relationship of client and attorney is created and controlled by the laws of the various states; that in determining the nature and extent of the privilege created between a lawyer and his client, federal courts should follow the state law. The Court pointed out that under California law,

there was no exception created to the attorney-client privilege.

Other cases such as Colton v. United States, 2 Cir., 306 F.2d 633, 636, do not apply the state law. However, this point poses no difficulties in the instant case, for the parties herein agreed that Illinois, which has no statute with respect to attorney-client privilege, looks to the common law as do the federal authorities.

The decision in Baird v. Koerner, supra, has been on the books for almost four years. Various points in the opinion have been cited in court decisions. But the primary holding that the identity of the client, under the facts of that case, was within the attorney-client privilege, has not been criticized. In fact, the decision in Baird was expressly followed. See N.L.R.B. v. Harvey, D.C.W.Va., 235 F.Supp. 580, 583–584 (1964).

In Colton, supra, the Court said 306 F.2d at page 637: "[T]he authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence. Thus the identity of a client, or the fact that a given individual has become a client are matters which an attorney normally may not refuse to disclose, even though the fact of having retained counsel may be used as evidence against the client. * * * To be sure, there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication, as where the substance of a disclosure has already been revealed but not its source."

The disclosure of the identity of the client in the instant case would lead ultimately to disclosure of the taxpayer's motive for seeking legal advice. That this motive of the taxpayer is subject to the privilege is confirmed by Wigmore wherein he states—"A communication as to * * * the ultimate motive of the litigation, is equally protected with others, so far as any policy of privilege is concerned." 8 Wigmore, Evidence, § 2313, 609–610.

Considering the peculiar facts in this case, we subscribe to the statement in 97 C.J.S. Witnesses § 283, at page 803:

" * * * [A]n attorney may not be compelled, at the instance of a hostile litigant, to disclose his retainer or the nature of the transaction to which it related, when such information could be made the basis of a suit against his client."

The order of the District Court dated February 12, 1965, holding defendant Boughner in civil contempt and assessing a penalty of $100.00 per day, is reversed and will be vacated and set aside.

Reversed.