In the Matter of WITNESSES BEFORE THE SPECIAL MARCH 1980 GRAND JURY.

Appeal of UNITED STATES of America.

No. 83–1611.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1983.

Decided March 2, 1984.

William C. Bryson, Dept. of Justice, Washington, D.C., for appellant.

John J. Jiganti, Harris, Burman, Sinars & Jiganti, Chicago, Ill., for appellee.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

In this appeal we consider the application of the attorney-client privilege to a grand jury's subpoena of information about a known client's fees. The district court found that the subpoenaed fee information was privileged because it might tend to incriminate the client. We conclude that the attorney-client privilege does not protect all of the subpoenaed materials, and we therefore reverse the judgment of the district court.

I

In 1982 a federal grand jury in the Northern District of Illinois served subpoenas duces tecum on three attorneys: John J. Jiganti, George Cotsirilos and Charles O. Farrar, Jr. The subpoenas demanded that the attorneys produce for the grand jury all records relating to money received from or on behalf of one Sam Sarcinelli.[1] The attorneys informed the government that they would not comply with the subpoenas on the grounds that the subpoenas asked for information protected by the attorney-client privilege. The attorneys have all acknowledged that they represented Sarcinelli during the time covered by the subpoenas.

When the attorneys refused to comply with the subpoenas, the government petitioned the district court for orders compelling the attorneys to comply and produce the documents. The government claimed that the information regarding Sarcinelli's fees was relevant for its investigation of continuing criminal enterprises. The attorneys argued that the fee information could be used against their client Sarcinelli in prosecutions for failure to file income tax returns or for violations of narcotics laws.[2] Because production of the records might tend to incriminate their client, they argued, the information was protected by the attorney-client privilege. The district court denied the government's petition and held that because the fee information might become a link in a chain of evidence which might incriminate the client, the attorney-client privilege prevented the government from compelling production of the information. This appeal followed.[3]

1. The subpoenas issued to Cotsirilos and Jiganti demanded the production of "any and all records relating to monies received from or on behalf of Sam Sarcinelli, representing payment for the legal services of yourself or any other attorney associated with you in the practice of law during the years 1976 through the present, including but not limited to amounts of payment, dates of payment, and methods of payment." The subpoena issued to Farrar demanded "any and all records relating to fees paid for legal services or monies held by or on behalf of Samuel S. Sarcinelli and/or Pamela Messina for the years 1976 through present including but not limited to dates of payments, individual amount of payments and method of payment."

2. In response to the government's petition for an order compelling compliance with the subpoenas, the attorneys said that Sarcinelli was serving a prison term for tax evasion, 26 U.S.C. § 7201. The attorneys had been advised that the grand jury was investigating Sarcinelli for possible willful failure to file tax returns and possible violations of narcotics laws.

3. This court has jurisdiction over the appeal of the district court's order denying the government access to the fee information. The district court's order effectively excludes evidence from the grand jury proceeding, and the United States attorney has certified that this appeal is not taken for purposes of delay and that the information sought is substantial proof of a fact material to the grand jury proceedings. The requirements for appellate jurisdiction under 18 U.S.C. § 3731 have thus been met. *In re Special September 1978 Grand Jury,* 640 F.2d 49, 55 (7th Cir.1980) (holding 18 U.S.C. § 3731 applicable to appeals from district court orders quashing grand jury subpoenas). The parties have not suggested that the subpoenaed information might be obtained through other means, and this court will not speculate on the matter. *In the Matter of Grand Jury Empanelled February*

## II

■ The general rule is well established that information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and client. *E.g., Matter of Walsh,* 623 F.2d 489, 494 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). However, courts have recognized that in exceptional circumstances, fee information may nevertheless be privileged. This case requires us to decide whether the fee information sought here falls within an exception to the general rule that fee information is not privileged. In so doing, we must choose between two alternative rationales supporting the application of the privilege to fee information in exceptional cases.

The district court and the attorneys take the approach that the attorney-client privilege applies to any fee information in an attorney's possession which might tend to incriminate the client. As the district court explained:

> When because of the surrounding circumstances, the fact of the payment of a fee or the date or form of payment becomes the basis of a factual inference to be drawn concerning the activities of the client, or becomes a link in a chain of evidence affecting the client, logic would dictate the conclusion that the simple fact of the payment of a fee or the date of payment or the mode of payment *has become a form of communication* and the privilege is extended to it.

*In the Matter of Witnesses Before the Special March 1980 Grand Jury,* No. 81 GJ 413, memorandum opinion at 2 (N.D.Ill. Mar. 3, 1983) (emphasis supplied). Thus the district court took the approach that fee information becomes a protected "communication" whenever it might be relevant to a criminal investigation or prosecution of the client. The government's theory is that the privilege applies only to confidential communications, that fees are not "communications" and that fee information is protected only when its disclosure would amount to a disclosure of other information involving confidential communications between attorney and client. There is apparently little doubt that the fee information sought in this case would be relevant to criminal investigations. Thus, the resolution of this case depends upon a choice between the incrimination rationale and the confidential communication rationale for the exceptional cases where fee information may be privileged.

The district court's approach to the privilege question in this case is inconsistent with decisions of the Supreme Court and this circuit. In *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), the Supreme Court considered the application of the attorney-client privilege to documents transferred by a client to an attorney in order to obtain legal advice, and the Court concluded that the privilege would apply if the documents could not be obtained from the client. 425 U.S. at 405, 96 S.Ct. at 1578. The analysis of the privilege in *Fisher* is highly relevant for our disposition of this case. The Court identified a single purpose for the privilege: "to encourage clients to make full disclosure to their attorneys," 425 U.S. at 403, 96 S.Ct. at 1577, and the Court limited its application to the fulfillment of that purpose:

> As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice. However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege.

425 U.S. at 403, 96 S.Ct. at 1577. Thus, the Supreme Court's analysis of the privilege

*14, 1978 (Colucci),* 597 F.2d 851, 856 n. 8 (3rd Cir.1979).

in *Fisher* focused only on the protection of confidential communications. Whether the information sought amounted to a protected "communication" was not made to depend on whether disclosure of the information would have incriminated the client.

In deciding the applicability of the attorney-client privilege to fee information, this circuit has consistently focused its analysis on whether the information would disclose confidential communications between the attorney and client. For example, in *United States v. Jeffers*, 532 F.2d 1101 (7th Cir.1976), *vacated in part on other grounds*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the government introduced evidence of the defendant's payment of attorneys' fees as evidence of substantial income from a continuing criminal enterprise. This court held that the attorney-client privilege did not apply to the fee information. Although evidence of the fees was certainly incriminating, the court said, "the crucial question is whether such disclosure violates the substance of a confidential communication between attorney and client." 532 F.2d at 1115. Because the fee information in *Jeffers* disclosed only an element of the defendant's expenditures in a given year, the disclosure violated no confidential communication:

> Like any other expenditure, attorney's fees are a legitimate subject of inquiry, unless other factors are present which make an answer to such an inquiry a disclosure of a fundamental communication in the relationship. The testimony here, however, elicited no more than would have been elicited by introducing evidence that the defendant had bought a Rolls-Royce for cash (i.e., a substantial expenditure).

532 F.2d at 1115. The fact that the fee information might incriminate the client did not transform the information into a "confidential communication."

Similarly, in *Genson v. United States*, 534 F.2d 719 (7th Cir.1976), this court held that the client's transfer of cash to an attorney in payment of a fee was not privileged because it was not a confidential communication. 534 F.2d at 731. There the client's alleged payment of the fee with cash taken in a bank robbery would obviously have been very incriminating, yet the circumstances of payment did not amount to or disclose a confidential communication. Instead, the cash was simply physical evidence of the crime, and the client's possession of it was relevant to link him to the crime.

Further, this court's discussion of the privilege in *Matter of Walsh*, 623 F.2d 489, 494–95 (7th Cir.1980), demonstrates the focus on the presence of a confidential communication. While the court recognized that a retainer agreement might be privileged if the identity of the client were unknown, 623 F.2d at 494 n. 6, the court's citations of *Tillotson v. Boughner*, 350 F.2d 663 (7th Cir.1965), and *N.L.R.B. v. Harvey*, 349 F.2d 900 (4th Cir.1965), also indicate that the privilege may apply in a situation where enough information has already been disclosed that revealing the client's identity would amount to a disclosure of confidential communications such as the motive for seeking advice.

Appellees have referred us to several decisions by the Fifth and Ninth Circuits which, they contend, hold that fee information is privileged if it might incriminate the client. We have examined these cases, most of which involve the identities of unknown clients, and we believe they may stand for a much narrower proposition— namely, that information which is ordinarily not privileged, such as a client's identity or fees, may be privileged if, under the circumstances, its disclosure would result in the disclosure of confidential communications. A careful examination of these cases leaves us uncertain as to whether the courts based their decisions upon the fact that disclosure might have been incriminating or instead upon the fact that disclosure would have disclosed confidential communications. However, in most of these cases, the courts were prepared to apply the privilege only where the disclosure of the client's identity or fees would in fact

have revealed the substance of what were indubitably confidential communications.

Appellees rely most heavily upon *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960), and *In re Grand Jury Proceedings (Jones)*, 517 F.2d 666 (5th Cir.1975). In *Baird v. Koerner*, an attorney had sent a check to the IRS on behalf of unnamed clients, and the IRS sought to compel him to reveal his clients' identities. The Ninth Circuit held that their identities were privileged. The court noted that disclosure of a client's identity "may well be the link that could form the chain of testimony necessary to convict an individual of a federal crime." 279 F.2d at 633. However, the court's opinion also suggests that the decision was based upon the fact that so much information had already been disclosed that revelation of the clients' identities would have disclosed confidential communications such as their concern about their tax returns. In its discussion of the attorney-client privilege, the court emphasized that the privilege protects "confidential communications," including the client's motive for consulting the attorney. *See* 279 F.2d at 629–32. The court's statement of the law embodies the confidential communication rationale for the privilege:

> If the identification of the client conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client, then the privilege should extend to such identification in the absence of other factors.

279 F.2d at 632.[4] Thus in *Baird*, disclosure of the clients' identities would have revealed, under the circumstances, confidential communications between clients and their attorney, including the clients' motivations for seeking legal advice.

The Fifth Circuit case of *Jones, supra*, 517 F.2d 666, also involved the identity of an unknown client, and the court held that the client's identity was privileged. The *Jones* court's reading of *Baird* emphasizes the incriminating nature of the information sought, 517 F.2d at 672, but the court's other comments leave unclear whether its holding was based upon the disclosure of confidential communications or upon the incriminating nature of the information. For example:

> Just as the client's verbal communications are protected, it follows that other information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions.

> \* \* \* \* \* \*

> The attorney-client privilege protects the [clients'] motive itself from compelled disclosure, and the exception to the general rule protects the clients' identities when such protection is necessary in order to preserve the privileged motive.

517 F.2d at 674–75. Despite this ambiguity in the basis for the court's conclusions, it is clear that under the circumstances of *Jones*, disclosure of the clients' identities would have revealed confidential communications.[5]

This circuit has applied *Baird v. Koerner* and held privileged an unknown client's identity where its disclosure would have revealed confidential communications such as the client's motive for seeking legal advice. *Tillotson v. Boughner, supra*, 350 F.2d at 666. However, we are unable to extract from *Baird, Jones* or *Tillotson* an incrimination rationale to apply to this case.

---

**4.** The court's discussion of California law on the privilege also displays the court's emphasis on confidential communications. *See* 279 F.2d at 634–35 & n. 18.

**5.** However, a majority of the Fifth Circuit has read *Jones* as turning on the incriminating character of the information. *See In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir.1982) (en banc). *Compare* the opinions by Judge Rubin, 680 F.2d at 1029–30, Judge Garwood, 680 F.2d at 1030–31, and Judge Politz, 680 F.2d at 1032–33. *See also United States v. Jeffers, supra*, 532 F.2d at 1115 (disclosure of identity in *Jones* would have disclosed confidential communication).

As a general matter, information about a known client's fees appears far less likely to reveal confidential communications than would the revelation of an unknown client's identity.

In addition, subsequent decisions of the Fifth and Ninth Circuits cast substantial doubt on whether those courts adhere to the incrimination rationale for these exceptions to the privilege. Some decisions have articulated the exception as whether disclosure of the information "would implicate that client in the very criminal activity for which legal advice was sought." *United States v. Hodge and Zweig*, 548 F.2d 1347, 1353 (9th Cir.1977), *quoted in In re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199, 204 (5th Cir.1981). *See also In re Grand Jury Witness (Salas)*, 695 F.2d 359, 361 (9th Cir.1982); *In re Grand Jury Subpoenas Duces Tecum (Marger)*, 695 F.2d 363, 365 (9th Cir.1982); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1027 (5th Cir.1982) (en banc); *In re Grand Jury Proceedings (Lawson)*, 600 F.2d 215, 218 (9th Cir.1979). Despite the ambiguity of the underlying rationale, in each of the cases just mentioned, the Fifth and Ninth Circuits were prepared to recognize the privilege only where disclosure of the client's identity or fees would have revealed a confidential disclosure, such as the client's involvement in the past criminal conspiracy.

In the recent case of *In re Osterhoudt*, 722 F.2d 591 (9th Cir.1983), the Ninth Circuit clearly rejected the incrimination rationale and held that fee information about a known client was not privileged. The court's per curiam opinion does not disagree with the results in prior cases, but it criticizes *Hodge and Zweig* and other cases for having "mistakenly formulated the exception not in terms of the principle itself, but rather in terms of this example of circumstances in which the principle is likely to apply." 722 F.2d at 593. We agree. While the exception is often discussed in terms of whether the information would incriminate the client, the exception is better understood in terms of confidential communications. The client's identity or

fee arrangements may be privileged where so much is already known that the identity or fees would reveal the client's confidential communication that he or she may, for example, have been involved in specific criminal conduct. The fact that the information is incriminating may provide all parties with their motives to seek its disclosure or protection; however, the application of the privilege turns not upon incrimination *per se* but upon whether disclosure would in effect reveal information which has been confidentially communicated.

Decisions in other circuits support our view of the privilege. For example, the Eleventh Circuit has held that the application of the privilege to fee information turns on whether the disclosure would reveal confidential communications. *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982) (fees paid by known client held not privileged). The Third Circuit has also concluded that the application of the privilege turns on the disclosure of confidential communications, not on whether the information might incriminate the client. *Matter of Grand Jury Empanelled February 14, 1978 (Markowitz)*, 603 F.2d 469, 473 & n. 4 (3rd Cir.1979) (identity of client). In one of the leading cases on the subject, *N.L.R.B. v. Harvey*, 349 F.2d 900, 905 (4th Cir.1965), the Fourth Circuit addressed the issue in terms of confidential communications. The privilege could apply to the client's identity because, "More than the identity of the client will be disclosed by naming the client." This court, in its first application of *Baird v. Koerner, supra,* and *N.L.R.B. v. Harvey* also adhered to the confidential communication rationale for the rule. *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir.1965) (disclosure of client's identity would disclose motive for seeking advice). *See also United States v. Pape*, 144 F.2d 778, 782 (2d Cir.) (Clark, J.) (retainer is not a confidential communication), *cert. denied*, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944).

 Because the attorney-client privilege protects only confidential communica-

tions, we decline the appellees' and the district court's invitation to adopt a rule protecting any fee information which might incriminate the client. Instead, we adhere to *Fisher* and to our reasoning in *Jeffers* and *Genson* and hold that information about a known client's fees is privileged only if, under the circumstances, its disclosure would in effect reveal confidential communications between the attorney and client. Because the district court erred in holding privileged all fee information in this case, we must reverse the judgment. Our view is dictated by the purpose of the privilege—to encourage full and free disclosure by clients to their lawyers.

### III

■ The problem remains, however, as to the scope of the subpoena in this case. We have held that the subpoenaed fee information is not privileged merely because it might incriminate the client, but it does not necessarily follow that the grand jury may obtain "any and all records relating to monies received" as demanded in the subpoenas. It is possible that records falling within the language of the subpoenas contain information which would reveal confidential communications between attorney and client. For example, billing sheets or time tickets which indicate the nature of documents prepared, issues researched or matters discussed could reveal the substance of confidential discussions between attorney and client. *Cf. Matter of Walsh,* 623 F.2d 489, 494–95 (7th Cir.1980) (grand jury could obtain fee records, but attorney witness could assert privilege with respect to specific documents and information). *See Tillotson v. Boughner, supra,* 350 F.2d at 666 (client's motive for seeking legal advice held privileged).

The Ninth Circuit's treatment of a similar problem in *In re Grand Jury Witness (Salas),* 695 F.2d 359, 362 (9th Cir.1982), is instructive. There the subpoena specified production of a variety of records relating to fees, including time records and contracts between attorney and client. The court noted that confidential communica-

tions, including a client's motive for litigation or for consultation with an attorney, are privileged. Therefore, the court said the privilege would protect "correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy," as well as "bills, ledgers, statements, time records and the like which also reveal the nature of the services provided." 695 F.2d at 362.

Because the district court applied a blanket privilege to all fee information in this case, we have no way of knowing whether the documents subpoenaed in this case include privileged information. On remand, however, if the witnesses believe that the subpoenaed documents include privileged information, they may submit the documents to the district court for *in camera* evaluation of their privilege claims. The witnesses will, of course, have the burden of establishing all elements of the privilege. The district court may then take appropriate steps to prevent disclosure of confidential communications, including the client's motive for seeking advice. *See Salas, supra,* 695 F.2d at 362; *In re Slaughter,* 694 F.2d 1258, 1260 n. 2 (11th Cir.1982) (*in camera* procedure for evaluation of privilege claim). *Cf. Lucas v. Turner,* 725 F.2d 1095, 1109 (7th Cir.1984) (approving *in camera* review of grand jury records before disclosure for use in civil litigation).

For the foregoing reasons, the judgment of the district court is

Reversed And Remanded