**In the Matter of GRAND JURY PROCEEDING, Grand Jury 1988–2 David CHERNEY.**

**Appeal of UNITED STATES of America.**

**No. 89–1193.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1990.

Decided March 27, 1990.

As Amended March 29, 1990.

Ralph M. Friederich, Asst. U.S. Atty., Office of the U.S. Atty., East St. Louis, Ill., for plaintiff-appellant.

Rick Halprin, Chicago, Ill., for defendant-appellee.

Benjamin S. Waxman, Jeffrey S. Weiner, Weiner, Robbins, Tunkey & Ross, Miami, Fla., for amicus curiae.

Before CUMMINGS, WOOD, Jr., and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

David Cherney was informed by the government that he would be subpoenaed to testify before the Grand Jury for the Southern District of Illinois regarding the identity of the individual who paid legal fees to him to represent an individual charged in a drug conspiracy. Cherney filed a motion to quash the subpoena claiming that the fee payer's identity was protected by the attorney-client privilege. After reviewing relevant documents *in camera*, the district court held that the information was protected by the privilege and granted the motion to quash. The government appeals. We affirm.

## I.

David Cherney, the appellee, is an attorney. In 1985 he represented an individual named Jack Hrvatin in a conspiracy-narcotics trial in the District Court for the Southern District of Illinois. Hrvatin's legal fees were paid by an unknown third party. The identity of the fee payer is at the center of this dispute as apparently the fee payer was also involved in the drug conspiracy and consulted Cherney for legal advice concerning such involvement. Following Hrvatin's conviction, Cherney was advised by the United States Attorney's Office that he was to be served with a subpoena to appear before the 1988–2 Grand Jury for the Southern District of Illinois to answer questions regarding the identity of the individual who paid Cherney to represent Hrvatin. Cherney then filed a motion to quash the subpoena pursuant to Fed.Crim. P.R. 17(c) on the grounds that the identity of the fee payer was protected by the attorney-client privilege. Both parties briefed the issue and Cherney submitted documents for *in camera* review. The district

court found that the *in camera* documents submitted by Cherney established that the fee payer sought personal legal advice from Cherney in advance of Cherney's representation of Hrvatin. The district court then granted the motion to quash, holding that the fee payer's identity was protected by the attorney-client privilege. The government appeals claiming that fee information is generally not protected by the privilege, and that the limited exception to this rule where the disclosure of such information would reveal confidential communications is inapplicable to this case.

■ The underlying theory of the attorney-client privilege is based on the premise "that encouraging clients to make fullest disclosure to their attorneys enables the latter to act more effectively, justly, and expeditiously, and that these benefits outweigh the risks posed by barring full revelation in court." J. Weinstein & M. Berger, Evidence, ¶ 503(02) 1982. *See Fisher v. United States*, 425 U.S. 391, 405, 96 S.Ct. 1569, 1578, 48 L.Ed.2d 39 (1976). Because "the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577. The attorney-client relationship itself does not create a "cloak of protection draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *United States v. Goldfarb*, 328 F.2d 280, 281–82 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). Rather, the privilege protects only confidential communications by a client to an attorney made in order to obtain informed legal assistance. *Fisher*, 425 U.S. at 403, 96 S.Ct. at 1577. As a general principle, "information regarding a client's fees is not protected by the attorney-client privilege because the payment of fees is not a confidential communication between the attorney and the client." *Matter of Witnesses Before Special March 1980 Grand Jury*, 729 F.2d 489, 491 (7th Cir.1984); *Matter of Walsh*, 623 F.2d 489, 494 (7th Cir.), *cert. denied*, 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). Payment of fees is incidental to the attorney client relationship and does not usually involve the disclosure of confidential communications arising from the professional relationship. *Matter of Witnesses*, 729 F.2d at 491. In certain situations, however, the disclosure of the identity of the fee payer may reveal the substance of a confidential communication and thus warrant protection under the privilege. *Id.; See also Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960). Here, the district court found that an attorney-client relationship existed between the fee payer and Cherney before Cherney was hired to represent Hrvatin and that the revelation of the fee payer's identity would be tantamount to revealing a confidential communication.

The government's principal claim on appeal is drawn from a two sentence quote at the conclusion of the district court's opinion that "[t]here is a strong probability that disclosure of the fee payer's identity and fee arrangements would implicate that client in the very criminal activity for which legal advice was sought. The Court therefore finds that the identity of the fee payer and the fee arrangement is protected by the attorney-client privilege." Based on this excerpt, the government argues that the court "lost sight of the general purpose of the attorney-client privilege and misapplied the law." In a nutshell, the government argues as follows: The attorney-client privilege is limited to protecting confidential communications. In its memorandum opinion, as demonstrated by the quote above, rather than finding that the disclosure would reveal a confidential communication, the court found that the privilege attached solely because the information would tend to *incriminate* the fee payer in criminal activities. As our case law makes clear, however, incrimination has been rejected as a sufficient basis for invoking the privilege. The government concludes that while disclosure of the fee payer's identity may link that individual with others involved in criminal activity, it will not reveal a privileged communication. Therefore, since the district court failed to properly apply the privilege, we should reverse its decision to grant the motion to quash.

We begin our analysis of the government's claim by examining the theory underlying the application of the attorney-client privilege to a client's identity and legal fee arrangement. In *Matter of Witnesses,* we identified two competing rationales for the privilege in this context: the "incrimination" rationale and the "confidential communications" rationale. In that case, the district court held that the attorney-client privilege applies to any fee information in an attorney's possession which might tend to incriminate the client. On review, this Court rejected the incrimination rationale for the privilege and held that "the application of the privilege turns not upon incrimination *per se* but upon whether disclosure would in effect reveal information which has been confidentially communicated." 729 F.2d at 494. We concluded that the fact that fee information may tend to incriminate a client does not transform the information into a confidential communication, and incriminating information which is not part of a confidential communication falls outside the ambit of the privilege. *Id.* at 495. *See also United States v. Hirsch,* 803 F.2d 493 (9th Cir. 1986). As an initial matter, therefore, the government is correct in its charge that the privilege is limited to confidential communications and the decision to quash the subpoena in the instant case cannot be supported solely by the determination that disclosure would incriminate the fee payer. The proper question is whether the revelation of the identity of the fee payer along with information regarding the fee arrangement would reveal a confidential communication between Cherney and the fee payer.

■■■ The government conceded at oral argument that an attorney-client relationship existed between the fee payer and Cherney prior to Cherney's representation of Hrvatin and the purpose for which the fee payer sought advice was his involvement in the underlying drug conspiracy. The government argues that, regardless of the formation of this relationship, information concerning the payment of fees simply cannot be considered a confidential communication. In the circumstances of this case,

we must disagree. A client's motive for seeking legal advice is undeniably a confidential communication. *See, e.g., Matter of Walsh,* 623 F.2d at 494 n. 6. Accordingly, the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice. *Tillotson v. Boughner,* 350 F.2d 663, 666 (7th Cir.1965); *Matter of Witnesses,* 729 F.2d at 493. Moreover, "information of a known client's fees appears far less likely to reveal confidential communications than would the revelation of an unknown client's identity." *Matter of Witnesses,* 729 F.2d at 493. In the situation at bar, the fee payer sought legal advice concerning his involvement in the drug conspiracy. Disclosure of the fee payer's identity would necessarily reveal the client's involvement in that crime and thus reveal his motive for seeking legal advice in the first place. The district court found that the client paid Hrvatin's legal fees for representation in the very same matter that gave rise to his attorney-client relationship with Cherney. In effect, therefore, disclosure of the client's identity would expose the substance of a confidential communication between the attorney and the client. The government is correct in its argument that disclosure here would incriminate the fee payer in the conspiracy. Incriminating information, however, may be shielded by the privilege where it is an *integral* part of a confidential communication. The client's identity, in this case, is privileged because its disclosure would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice in the first place. This is not the typical case where the government seeks disclosure of a known client's general fee structure, which is usually to determine whether the attorney was paid with illicit funds. In that scenario, revelation of the fee information would most likely serve to incriminate the fee payer, but would not risk exposure of a confidential communication.

The government makes the overbroad argument that disclosure of the fee payer's identity would do no more than prevent a culpable individual from using his attorney-

client relationship as a shield against incrimination. The privilege may well at times serve to preclude an attorney from incriminating his client but this is the price we pay for a system that encourages individuals to seek legal advice and to make full disclosure to the attorney so that the attorney can render informed advice. Invading the privilege may allow the government to prosecute more criminals but will have a grave effect on our justice system as clients, knowing that their confidential communications may be subject to disclosure, will eventually be less than candid with their attorneys or will consider foregoing legal advice altogether. This cannot be a desired result.

In affirming the district court's grant of the motion to quash the subpoena, we pause to note that the government's attack on the district court's opinion is unjustified. Any fair reading of the opinion reveals that the district court premised its order on the well-supported proposition that where disclosure of the unknown client would, in effect, reveal the client's motive for seeking legal advice, the privilege precludes disclosure. The government acts disingenuously by offering a two sentence excerpt from a four page opinion to support a misleading interpretation of the trial court's reasoning. The government ends up arguing that the disclosure of the fee payer's identity is not a confidential communication—a position which does not require such a distortion of the lower court's holding.

In its brief, the government adamantly asserts that protecting the fee payer's identity will serve to open Pandora's box by creating and promoting moral, ethical and professional problems in the attorney-client relationship. Specifically, we are told that protecting the client's identity will encourage attorneys to take on multiple representation, ignore their ethical duties, and "become conduits in furtherance of criminal schemes." We refuse to indulge in the government's unwarranted forecast that our holding today will lead to the imminent demise of the ethical base of our adversary system. The attorney-client privilege is essential "to the proper functioning of our adversary system of government." *United States v. Zolin,* —— U.S. ——, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989). Our holding today in no way expands the protections afforded by the attorney-client privilege; it is still confined to confidential communications. A rule that would permit the government to compel an attorney to disclose her client's identity under circumstances that would reveal the client's confidential communications would have serious consequences for our system of justice. We are also unwilling to adopt the government's implicit aspersion that there is an inherent lack of ethical behavior on the part of the private defense bar. It is quite obvious that the government understandably wants to learn the identity of the fee payer so that it can bring a suspected drug felon to justice. Nevertheless, the government's interests in this instance must give way to those served by the attorney-client privilege.

## II.

The fee payer sought legal advice from Cherney concerning potential criminal charges. As such, disclosure of the fee payer's identity would convey the substance of a confidential communication. Accordingly, under the special circumstances of this case, the privilege attaches and the opinion of the district court is AFFIRMED.