UNITED STATES of America, Plaintiff,

v.

Daniel E. MONNAT, and Monnat &
Spurrier, Chartered, Defendants.

No. 93–1326–PFK.

United States District Court,
D. Kansas.

Jan. 13, 1994.

Randall K. Rathbun, U.S. Atty., Wichita,
KS and Rachel Cramer, Trial Atty., Tax Div.,
U.S. Dept. of Justice, Washington, DC, for
plaintiff.

John J. Ambrosio, Topeka, KS, Garvin A.
Isaacs, Oklahoma City, OK, and Robert C.
Fogelnest, New York City, for defendants.

*MEMORANDUM AND ORDER*

PATRICK F. KELLY, Chief Judge.

The government has moved to enforce its
subpoena which seeks to discover the identity
of the defendants' client. Full hearing was
taken up on January 10, 1994, at which time
the court took the matter under advisement.

The factual background of the case is sim-
ple, and save for exceptions noted, it is es-
sentially uncontroverted. Defendant Daniel
E. Monnat completed IRS Form 8300 in
January of 1992, which reported payment by
a client of a substantial cash amount ($16,-
000.00), but did not, as required by IRS
regulations, disclose the name, address or
taxpayer identification number of the client.
The sole question presented here is whether
the defendants are excused from compliance
with federal legislation requiring disclosure
in such instances, due to Monnat's status as
an attorney. The defendants argue that the
federal legislation in issue conflicts with their
client's Sixth Amendment right to counsel,

and their Fifth Amendment right to due process of law. The defendants also argue that disclosure of the client's identity in the present case would conflict with their ethical obligations to maintain the confidences of their client, as prescribed in Rule 1.6 of the Model Rules of Professional Conduct. (See also Defs.' Brief at 36.)

As a part of The Deficit Reduction Act of 1984, Pub.L. 98–369, 98 Stat. 494, Congress enacted 26 U.S.C. § 6050I(a), which provides that anyone

> (1) who is engaged in a trade or business, and

> (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions, shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.

Under subsection (b) of this section, the person receiving such cash in such a transaction must report the name, address, and taxpayer identification number of the person giving the cash.

The statute does not state explicitly that attorneys are covered by its requirements. At the same time, attorneys are not explicitly exempted from the broad language of the statute. (The statute does exempt transactions involving certain financial institutions (26 U.S.C. § 6050I(c)(1)) and transactions occurring wholly outside the United States (26 U.S.C. § 6050I(c)(2)).) The regulations adopted by the IRS which implement the statute include an attorney's representation of a criminal defendant as one of the transactions which falls within the scope of the statute. See 26 C.F.R. § 1.6050I–1(c)(7)(iii) (Example (2)).

On balance, the court's research suggests at least three reasons why the chance of ruling here that the attorney is exempt from the scope of § 6050I is nil.

First, the two appellate decisions which have approached the issue directly have both held that an attorney who receives substantial cash payments is not privileged to withhold the identity of his client. In *United States v. Leventhal,* 961 F.2d 936 (11th Cir. 1992), and *United States v. Goldberger & Dubin,* 935 F.2d 501 (2d Cir.1991), the Eleventh and Second Circuits explicitly rejected the constitutional and confidentiality claims advanced herein. Notwithstanding defense counsel's arguments to the contrary, these cases appear to be straightforward in their rejection of the attorney's arguments to the contrary.

Second, it has to be noted that there is no authority running in the other direction, i.e., that would support the position taken by the defendants that an attorney may withhold the name of a person whose identity would otherwise be required under § 6050I. The only cases which have addressed an attorney's rights and obligations under § 6050I are the two cases cited above, both of which hold there is no privilege against disclosure.

Defendants' brief identifies several cases in which disclosure was not required by various courts, including, in particular, the decision of the Seventh Circuit in *In re Grand Jury Proceedings, Cherney,* 898 F.2d 565 (7th Cir. 1990). These decisions do not, however, directly address the validity of § 6050I in the context of attorney-client transactions. Rather, these decisions involve the validity of grand jury subpoenas of attorneys to produce the identity of their client or the nature of a client's payments to his attorney, in matters unrelated to the financial reporting requirements of § 6050I.

Moreover, in any event these cases provide little support for the defendants' argument. In *Cherney,* for example, an attorney was ordered by grand jury subpoena to produce the identity of his client. The Seventh Circuit held that the attorney was not required to identify the client. However, the court stressed in its opinion that its ruling was based upon the "special circumstances" present in the case. 898 F.2d at 568. In *Cherney,* it was known that the client had sought legal advice concerning his alleged involvement in a drug conspiracy, and the government conceded that revealing the client's identity would incriminate the client in the conspiracy. The court held that the client's identity was privileged since "its disclosure

would be tantamount to revealing the premise of a confidential communication: the very substantive reason that the client sought legal advice in the first place," which situation the court contrasted with other, more typical situations where revelation "would most likely serve to incriminate the fee payer, but would not risk exposure of a confidential communication." *Cherney,* 898 F.2d at 568.

*Cherney* and other decisions of a similar nature have generally been limited to situations in which, owing to the particular facts of the case, revelation of the client's identity would effectively be a revelation of the client's communications to his attorney. The courts have stressed that these situations were limited exceptions to a general rule that would hold there is no privilege to withhold the identity of a client. *See Vingelli v. DEA,* 992 F.2d 449 (2d Cir.1993).

This brings us to the third and final factor. The Tenth Circuit's comments in a recent case involving a grand jury subpoena of counsel indicate that it would not look with pleasure upon a general grant of privilege against disclosure of § 6050I information. In *In re Grand Jury Subpoenas (United States v. Anderson),* 906 F.2d 1485 (10th Cir.1990), the district court had issued contempt findings against attorneys representing clients charged with drug traffic offenses for failing to identify the source of their fees, as required by subpoenas issued by a grand jury. The Tenth Circuit affirmed the contempt findings, noting that "[i]t is well recognized in every circuit, including our own, that the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." 906 F.2d at 1488. The court found that none of the narrow exceptions to the general requirement of disclosure was present:

> The purpose behind the attorney-client privilege is to preserve *confidential communications* between attorney and client. Information regarding the fee arrangement is not normally part of the professional consultation and therefore it is not privileged even if it would incriminate the client in wrongdoing. In other words, while payment of a fee to an attorney is necessary to obtain legal advice, disclosure of the fee arrangement does not inhibit the normal communications necessary for the attorney to act effectively in representing the client. Absent one of those rare circumstances in which the payment of the fee itself is unlawful or where an actual client paid the fee and sought advice concerning the actual case under investigation as in *Baird [v. Koerner,* 279 F.2d 623 (9th Cir.1960) ], we hold that fee arrangements are not protected by the attorney-client privilege.

906 F.2d at 1492 (emphasis in original; citations omitted).

Given the foregoing, it would appear that the court's prerogatives are clear. The lawyer is not excluded from compliance with the Act, and somehow the identity of his client is not protected and he must comply.

The problem here is with the court's own perceptions as to what is expected of the attorney in the exercise of his professional role. In the court's view, this Act, these decisions, and the reasoning therefor fly in the face of what an attorney's role is all about. The attorney is not expected to confer with a client as in a commercial venture. The client's role is more than that; indeed, it is more than even a fiduciary relationship in its highest mode. It is a relationship different from any other in our society, save for the confessor or physician. In the court's view, it is a sacred trust and should not be intruded in. In this regard, it seems that lawyers, unlike any others, are duty-bound to preserve that trust, as they, unlike others, are bound by canons of ethics geared to preservation of that trust. Given such perceptions, this court is troubled with these decisions. The attorney's ethical responsibilities are at risk. It is clear to this court that if and when a client consults with an attorney, retaining him for whatever purpose, the canons mandate that the client's very identity must be preserved. In saying this, the court appreciates that under Rule 1.6 a lawyer may reveal such information to the extent the lawyer reasonably believes necessary to comply with requirements of law. Rule 1.6(b)(2). In the court's view, it follows that if the client is once informed that his payment of a cash fee to the attorney in an amount in excess of $10,000.00 automatically puts in place his public identity, then only the

client, not the lawyer, must consent. The court is informed that in this instance the client did not consent. In the face of this, to proceed otherwise, in compliance with the Act, may well submit the attorney to an unethical act. In this instance, this attorney was advised by his attorney that such act would be unethical.

Stated another way, it follows that if the lawyer ignores the client's refusal to consent, thus complying with the Act, he may find himself in the same situation as that in *Cherney*. Surely, the lawyer's compliance may submit the client to an investigative process at the hands of the United States and even indictment, all as a consequence of the lawyer's revelations. In such a setting, while the lawyer has complied with the requisites of the Act, he has done so at quite a price.

The court's perceptions may be misplaced, but the fact remains that the attorney's conduct and ethical ramifications are of paramount concern to him. This court is not alone. *See The Georgetown Journal of Legal Ethics*, "Form 8300: The Demise of Law as a Profession," Vol. V, No. 3, at 485. Further, the court is advised that Attorney General Reno has recently expressed her interest and concern about this matter. Thus, before proceeding further, this court elects to take the following steps:

1. This matter is suspended awaiting further findings and rulings of the court;

2. This opinion will go forward to the Chairman of the Federal Court Committee on Attorney Conduct with a request for that committee to undertake a study of the issues in this case, taking into account the court's comments noted herein. The committee will be at liberty to fully review the ethical ramifications, if any; it may independently research the issue; it will be at liberty to interview the defendants and their counsel, inviting counsel and representatives of the United States to participate.

3. This court will welcome the committee's report within 120 days hereof.

IT IS SO ORDERED.