935 A.2d 385

## WFS FINANCIAL, INC.

v.

## MAYOR AND CITY COUNCIL OF BALTIMORE.

No. 12, Sept. Term, 2007.

Court of Appeals of Maryland.

Nov. 7, 2007.

2

William M. Rudow (Brett R. Myerson of Law Office of William M. Rudow, LLC, Baltimore), on brief, for appellant.

Rudolph F. Drayton, Asst. State's Atty. (Patricia C. Jessamy, State's Atty. for Baltimore City, Baltimore), on brief, for appellee.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, specially assigned) and DALE R. CATHELL (Retired, specially assigned), JJ.

HARRELL, J.

## I.

The facts of this case are straightforward and undisputed. On 5 August 2004, Allen S. Cooley and Karen A. Cooley agreed to purchase a 1999 Chevrolet Tahoe from Fox Chevrolet, Inc., with financing provided by WFS Financial, Inc. ("WFS"). The sales contract and security agreement for the vehicle were assigned to WFS. WFS perfected the security interest in the vehicle.

On 18 May 2006, the vehicle was seized by the Baltimore City Police Department in the course of an investigation into illegal drug trafficking.[1] On 29 June 2006, the Mayor and City Council of Baltimore ("the City") filed a complaint in the Circuit Court for Baltimore City seeking forfeiture of the vehicle, pursuant to Title 12 of the Maryland Criminal Proce-

---

1. "A motor vehicle used in violation of the Controlled Dangerous Substances law" may be forfeited if "any quantity of a controlled dangerous substance is sold or attempted to be sold...." Maryland Code (2001) Criminal Procedure Article § 12–204(b). The parties in this case agree that the seizure of the vehicle was appropriate and that forfeiture proceedings by the City would be proper had the payments on the purchase money loan not fallen into default.

**4**

dure Article.[2] The City notified WFS of its intent to seek forfeiture via service of the complaint and a summons issued on 3 July 2006.[3]

The Cooleys subsequently defaulted on payments owed to WFS under the sales contract and security agreement. In a letter dated 2 August 2006, WFS, closely following the requirements enumerated in § 12–101, notified the City of its intent to sell the vehicle,[4] provided copies of the sales contract, security agreement, assignment, and security interest filing,[5] and provided an affidavit stating the reasons for the default.[6] WFS requested that the City release the seized vehicle to it.

Although the City agreed that the vehicle should be released to WFS, the City demanded that WFS pay approximately $200 in towing and storage fees as a condition precedent to the release of the vehicle. WFS retorted that the City's towing and storage fees should be paid out of the proceeds of the sale of the vehicle, if the vehicle is sold for more than the underlying debt owed on the sales contract.

WFS filed a motion in the Circuit Court in the forfeiture action seeking an order releasing the vehicle without the requirement that the towing and storage fees be paid prior to release. The Circuit Court agreed with the City's position.

WFS appealed to the Court of Special Appeals. Before that court could decide the appeal, we granted certiorari, on our initiative, to consider whether an innocent lienholder is re-

---

2. Maryland Code (2001) Criminal Procedure Article § 12–101 et seq. permits local governments, as a punitive measure, to institute forfeiture proceedings against property that has been used in drug trafficking. Unless otherwise provided, all statutory references in this opinion are to Maryland Code (2001) Criminal Procedure Article.

3. The summons and complaint are required to be served on known lienholders within 20 days after the filing of the complaint. § 12–305(b).

4. § 12–501(a)(1).

5. § 12–501(a)(2).

6. § 12–501(a)(3).

quired to pay towing and storage fees as a condition precedent to the release of a seized, but not yet forfeited, vehicle.

## II.

There are two different routes by which a lienholder may repossess and sell property seized pursuant to Title 12 of the Criminal Procedure Article. The distinguishing feature between the two procedures is the forfeiture hearing. If a forfeiture hearing has been held, § 12–402 applies. By contrast, if a forfeiture hearing has not been held and the property has merely been seized, §§ 12–501 to 12–505 govern. Although in the present case a forfeiture hearing has not been held, and thus §§ 12–501 to 12–505 apply, the two statutory schemes are related nonetheless and should be considered together. Accordingly, we shall inquire into the relevant history and application of both statutory schemes to illuminate our path here.

In 1970, the General Assembly repealed the Uniform Narcotic Drug Act and replaced it with the Maryland Controlled Dangerous Substances Act. *State v. One 1983 Chevrolet Van Serial No. 1GCCG15D8D 104615*, 309 Md. 327, 329, 524 A.2d 51, 52 (1987) (citing Chapter 403 of the Acts of 1970). The statute contained provisions that permitted forfeiture of "property used . . . to transport . . . [illegal drugs]." Chapter 403 of the Acts of 1970. The statute, however, contained very little protection for holders of perfected security interests or innocent owners of seized vehicles. After this Court decided *Prince George's County v. Blue Bird Cab*, 263 Md. 655, 284 A.2d 203 (1971),[7] the Legislature amended the statute to offer more protection to innocent owners. No protection then was included for lienholders. *Ford v. General Motors Acceptance*

---

7. In *Blue Bird,* a cab company leased a taxicab to a driver. The driver was arrested for selling narcotics. Prince George's County initiated forfeiture proceedings. We held that the forfeiture statute offered no protection to the cab company and Prince George's County was entitled to take the car by forfeiture. *Blue Bird,* 263 Md. 655, 284 A.2d 203.

*Corp.*, 98 Md.App. 257, 265, 633 A.2d 410, 414 (1993) (citing Chapter 659 of the Acts of 1972).

Car dealers complained that the law provided inadequate notice to lienholders, permitted the State to hold vehicles for more than one year (exposing them to theft and vandalism), and provided that proceeds from forfeited vehicles may be used to pay for seizure and forfeiture costs before secured debts. Dealers pointed out that this often left insufficient funds to pay off the purchase money debts owed by the owners of a forfeited vehicle. DEP'T OF LEGISLATIVE REFERENCE, SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: SUMMARY OF COMMITTEE REPORT, S.B. 589, at 3 (1984).

In response, the General Assembly enacted S.B. 589 in 1984. The stated purposes of the bill included "altering the provisions for application of proceeds of repossessed goods that are resold" and "providing for the release of a motor vehicle to the holder of a security interest in certain circumstances." Chapter 549 of the Acts of 1984. The bill repealed Maryland Code (1957, 1976 Repl. Vol., 1977 Cum.Supp.), Art. 27, § 297(f), which had provided:

> The proceeds of sale shall be applied first to payment of all proper expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising and court costs; secondly to payment of the balance due on a lien (if any). The balance (if any) shall be deposited in the general funds of the state.

Senate Bill 589 enacted Maryland Code (1957, 1987 Repl. Vol.) Art. 27, § 297(j), which provided:

> (1) If, after a full hearing, the court determines that the motor vehicle should not be forfeited, the court shall order that the motor vehicle be released.
>
> (2)(i) If the court determines that the motor vehicle should be forfeited, the court shall order that the motor vehicle be forfeited to the state.
>
> (ii) If, however, the court determines that the forfeited motor vehicle is subject to a bona fide recorded security

interest created without the knowledge that the motor vehicle was being, or was to be used in violation of this subtitle, the court shall order that the motor vehicle be released within 5 days to the secured party of record. (iii) The secured party shall sell the motor vehicle in a commercially reasonable manner.

(iv) The proceeds of the sale shall be applied as follows:

1. To the court costs of the forfeiture proceeding;

2. To the balance due the secured party including all reasonable costs incident to the sale;

3. To payment of all other expenses of the proceedings for forfeiture, including expenses of seizure, or maintenance of custody; and

4. To the general funds of the state or the political subdivision that seized the motor vehicle.[8]

The Committee Report stated that the intent of certain committee amendments to S.B. 589, retained in the enacted bill, was to ensure that "the balance of proceeds of the sale of goods seized in connection with a drug arrest shall go to state or local funds only after the holder of a secured interest is paid." SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: COMMITTEE REPORT, S.B. 589, at 4 (Md.1984). The Report also noted that the law was intended to "make the Commercial Law article consistent with the Crimes and Punishments article." SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: COMMITTEE REPORT, S.B. 589, at 6 (Md.1984). In order to render the two articles consistent, the

---

8. The Summary of Committee Report regarding S.B. 589 described the change in the law:

The proceeds of sale shall be applied as follows:
(a) for the cost of sale, retaking and storing the vehicle;
(b) for the secured party's lien;
(c) for court costs for forfeiture;
(d) for any other lien;
(e) all other government expenses for forfeiture including maintenance and storage.

DEP'T OF LEGISLATIVE REFERENCE, SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: SUMMARY OF COMMITTEE REPORT, S.B. 589, at 6 (Md.1984).

bill limited an owner's right of redemption if the "goods were seized by a police department, bureau, or force and the goods were repossessed because of that seizure, in which event, the buyer shall have no right to redeem or take possession, even if the buyer tenders payment of the entire balance due under the agreement." Chapter 549 of the Acts of 1984. In addition, companion changes to the Commercial Law Article ensured that the owner of the vehicle was not to receive the proceeds of the sale of forfeited property.[9]

The relevant provisions enacted in 1984 remain in effect today with only minor technical amendments achieved through recodification. Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 297(j) became Maryland Code (2001) Criminal Procedure Article § 12–402, which provides as follows:

(a) After a full hearing, if the court determines that the property should not be forfeited, the court shall order that the property be released.

(b) Subject to § 12–403(b) of this subtitle, if the court determines that the property should be forfeited, the court shall order that the property be forfeited to the appropriate governing body.

(c) If the court determines that the forfeited property is subject to a valid lien created without actual knowledge of the lienholder that the property was being or was to be used in violation of the Controlled Dangerous Substances law, the court shall order that the property be released within 5 days to the first priority lienholder.

---

9. The language in the statute read:

After application of the proceeds and deposit in accordance with [the scheme of payment priorities] of this subsection, any remaining balance shall be paid to the buyer, unless the sale occurred because of the seizure of the goods by a police department, bureau, or force, in which event the remaining balance shall be paid to the police department, bureau, or force that seized the goods, to be disposed of in accordance with the provisions of section 297 of Article 27 of the code or any other law that applies to the seizure and forfeiture of the goods.

Chapter 549 of the Acts of 1984.

(d) (1) The lienholder shall sell the property in a commercially reasonable manner.

(2) The proceeds of the sale shall be applied as follows:

(i) to the court costs of the forfeiture proceeding;

(ii) to the balance due the lienholder, including all reasonable costs incident to the sale;

(iii) to payment of all other expenses of the proceedings for forfeiture, including expenses of seizure or maintenance of custody; and

(iv) except as provided in § 12–403(b) of this subtitle, to the General Fund of the State or of the political subdivision that seized the property.

 It is clear from the plain meaning of the statute, corroborated by the legislative history, that the Legislature intended for seizure and maintenance costs to be paid after the balance due the lienholder is paid from the proceeds of sale. The Legislature repealed the earlier statute prioritizing seizure costs ahead of the lienholder's balance. In its place, the Legislature enacted a law which expressly relegated the payment of seizure and storage costs to payment after the lienholder is satisfied from the proceeds of sale. The Summary of Committee Report regarding S.B. 589 expressed the purpose of the statute as being to affect such a change. That provision has been recodified without substantial change and remains in effect today. If, after a forfeiture hearing, the court finds that forfeited property is subject to a valid security interest, the lienholder is entitled to payment from the proceeds of sale before payment of towing and storage expenses to the forfeiting authority.

In cases where there has not been a forfeiture hearing, §§ 12–501 to 12–505 apply, which were recodified from Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 297(r). In 1988, the General Assembly enacted Senate Bill 385. Chapter 586 of the Acts of 1988. Senate Bill 385 enacted Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 297(r), which provided:

(r)(*l*)This subtitle may not be construed to prohibit a secured party from exercising its rights under applicable law, including the right to sell a motor vehicle that has been seized under this subtitle, in the event of a default in the obligation giving rise to the security interest.

(2) (i) A secured party exercising the right to sell a motor vehicle that has been seized under this section shall notify the State's Attorney in writing of the secured party's intention to sell the motor vehicle.

(ii) The notice shall be accompanied by copies of documents giving rise to the security interest and shall include an affidavit under oath by the secured party that the underlying obligation is in default and the reasons for the default.

(iii) Upon request of the secured party, the motor vehicle shall be released to the secured party.

(3) Except as provided in paragraph 4 of this subsection, the rights and duties provided by law to the secured party for the sale of collateral securing an obligation in default shall govern the repossession and sale of the motor vehicle.

(4) (i) A secured party may not be required to take possession of the property prior to the sale of the vehicle.

(ii) The proceeds of the sale shall be applied first to the costs of the forfeiture proceeding, then as provided by law for distribution of proceeds of a sale by the secured party.

(iii) Any portion of the proceeds that would be paid to an owner of the vehicle under the applicable law relating to distribution of proceeds shall be paid to the seizing agency and subject to forfeiture. If no order of forfeiture is entered, the State shall remit to the owner that portion of the proceeds and any costs of the forfeiture proceedings paid from the proceeds of the sale.

(5) (i) If the interest of the owner in the motor vehicle is redeemed, the secured party shall mail a notice of the redemption to the State's Attorney within 10 days after the redemption

(ii) If the motor vehicle has been repossessed by the secured party, the secured party shall return the motor vehicle to the seizing agency within 21 days after redemption.

(iii) The seizing authority and the State's Attorney may then proceed with the forfeiture of the motor vehicle or the proceeds, and all time limitations required under this section for notice and filing of the complaint for forfeiture shall run from the date of redemption or purchase of the motor vehicle.

Then Chief Judge Wilner, writing for the Court of Special Appeals in *Ford v. General Motors Acceptance Corp.*, 98 Md.App. 257, 271, 633 A.2d 410, 417 (1993),[10] summarized the legislative purpose of that statute:

One purpose of the bill ... was explained in the Senate Judicial Proceedings Committee Floor Report. The Committee noted that "[t]his bill allows a secured party to sell a motor vehicle seized for violations of the controlled dangerous substance laws if the owner of the vehicle is in default on payments." It explained that "[u]nder current law, the secured party must wait until the court decides the forfeiture issue" and that the purpose of the bill was "to allow a lender to realize his collateral if the underlying obligation is in default, without waiting for the completion of the forfeiture."

(emphasis and citations omitted)

The Senate Judicial Proceedings Committee Bill Analysis for S.B. 385 offers further insight into the legislative intent:

Under current law, the secured party must wait until the court decides the forfeiture issue. If forfeiture is ordered, the secured party may sell the vehicle. The proceeds are applied as follows: (1) to court costs; (2) to the balance due the secured party; (3) to all other expenses of the forfeiture

---

**10.** *Ford v. General Motors Acceptance Corp.* held that the default giving rise to the lienholder's right to repossess and sell the vehicle under Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 297(r) must be a financial default.

**12**

proceeding including expenses of the seizure and maintenance of custody; and (4) to the general funds of the State or political subdivision that seized the vehicle.

The purpose of this bill is to allow a lender to realize his collateral if the underlying obligation is in default, without waiting for the completion of the forfeiture.

SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: BILL ANALYSIS, S.B. 385 (Md.1988).

The Legislature, in essence, created a "fast track" for secured parties to repossess a seized vehicle when the owner of the vehicle is in default.[11] We can find nothing to indicate that the Legislature intended to change the priority of payment scheme in the new expedited process. In fact, the attendant Bill Analysis implies that the Legislature intended to maintain the prevailing priority system. SENATE JUDICIAL PROCEEDINGS COMMITTEE, COMMITTEE REPORT SYSTEM: BILL ANALYSIS, S.B. 385 (Md.1988).

The relevant provisions of S.B. 385 were recodified into present day §§ 12–501 to 12–505 with only minor technical amendments. Section 12–501 reads:

11. Although it is not expressly stated in the legislative history, the rationale behind this expedited process seems apparent. In many vehicle repossession cases, the balance owed to the secured party exceeds the then value of the vehicle. In such a situation, an owner in default essentially has no remaining economic interest in the vehicle. Prior to 1988, if a law enforcement agency seized a vehicle in default and with no owner equity, the forfeiting authority would have to hold a forfeiture hearing, despite the fact that the hearing concerned a moot issue. Regardless of how the court ruled in the forfeiture hearing, the owner was going to forsake possession of the vehicle to the secured party, who was then going to sell the vehicle. If the proceeds of the sale did not exceed the balance owed to the lienholder, the owner of the vehicle would receive nothing.

The 1988 changes to the statute eliminated the need for a forfeiture proceeding in such cases. After the 1988 revisions, if a secured party exercised its right to sell the property under the expedited process, a forfeiture hearing was only required when the sale price of the vehicle exceeded the debt owed to the lienholder. If that situation existed, the forfeiture hearing adjudicated entitlement to the proceeds in excess of the balance owed to the secured party. In essence, the 1988 changes to the statute gave lienholders an opportunity to avoid the forfeiture proceeding where such a proceeding would be moot.

13

(a) Before exercising the right to sell property that has been seized under this title, a lienholder shall give to the forfeiting authority:

(1) written notice of the intention to sell;

(2) copies of documents giving rise to the lien;

(3) an affidavit under oath by the lienholder:

(i) stating that the underlying obligation is in default; and

(ii) stating the reasons for the default.

(b) On request of the lienholder, the forfeiting authority shall release the property to the lienholder.

## III.

■ We now turn to the application of the relevant statutory provisions in the present case. Because a forfeiture proceeding has not been held, §§ 12–501 to 12–505 apply. "The cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995) (quoting *Fish Market v. G.A.A.,* 337 Md. 1, 8, 650 A.2d 705 (1994)). "The starting point in statutory interpretation is with an examination of the language of the statute. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written." *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994). The "courts, in the absence of ambiguity, should, as a general rule, confine themselves to a construction of a statute as written, and not attempt, under the guise of construction, to supply omissions or remedy possible defects in the statute, or to insert exceptions not made by the Legislature." *Amalgamated Cas. Ins. Co. v. Helms,* 239 Md. 529, 535–36, 212 A.2d 311, 316 (1965). We noted in *Mayor of Baltimore v. Hackley,* 300 Md. 277, 283, 477 A.2d 1174, 1177 (1984) that

a court may not insert or omit words to make a statute express an intention not evidenced in its original form. Moreover, the legislative body is presumed to have had, and

acted with respect to, full knowledge and information as to prior and existing law and legislation on the subject of the statute and the policy of the prior law.

On its face, the plain meaning of the statute requires the forfeiting authority, upon receipt of the specified documents, to release the property to the lienholder. In clear, precise terms, the statute requires that "the forfeiting authority shall release the property to the Henholder." § 12–501; *see Livesay v. Baltimore County*, 384 Md. 1, 16, 862 A.2d 33, 42 (2004) (stating that " '[m]ay' is generally interpreted as permissive, in contrast with 'shall,' which is interpreted as mandatory"); *Vieira v. Prince George's County*, 101 Md.App. 220, 238, 645 A.2d 639, 647 (1994) ("The Legislature has provided a simple directive to solve the problem by the adoption of the statute. It has indicated its intention that its directive be followed by including the word "shall" in the language of the [forfeiture] statute.")

Attempting to read into the statute additional conditions precedent to release of the vehicle, such as a requirement that the Henholder pay the seizing government's costs of towing and storage of the vehicle, is contrary to the canon of statutory construction *inclusio unius est exclusio alterius.* *See Chow v. State*, 393 Md. 431, 458, 903 A.2d 388, 404 (2006) (". . . Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius,* or the expression of one thing is the exclusion of another. Black's Law Dictionary 1717 (8th ed.2004)" (quoting *Comptroller of Treasury v. Blanton*, 390 Md. 528, 536 n. 17, 890 A.2d 279, 285 n. 17 (2006))). The Legislature listed specific requirements to be accomplished by the lienholder in order to obtain the release of the vehicle. If the Legislature intended payment of towing and storage fees to be a condition precedent to the release of the vehicle to the lienholder, the Legislature could have inserted such a requirement. It chose not to do so.

■ Our construction of the statute is consistent with other statutory provisions regarding forfeiture. In enacting § 12–402, the Legislature's clear intent was for the debt owed the

lienholder be paid out of the proceeds of sale before potential satisfaction of the government's costs of towing and storage. The Legislature was aware of this priority system when creating the § 12–501 expedited process for vehicles in financial default. "We presume also that the Legislature has acted with full knowledge of prior legislation...." *Green v. Carr Lowery Glass Co., Inc.*, 398 Md. 512, 522, 921 A.2d 235, 241 (2007). There is no indication that the Legislature intended to re-order the priority of payments for the new expedited process under § 12–501. We do not conclude that the Legislature intended to develop an expedited process designed to save the lienholder from having to deduct court costs from the proceeds of the sale of the vehicle only to require the lienholder to pay in advance storage and towing fees instead.[12]

■ The City's contention that the lienholder may not obtain the vehicle under a § 12–501 proceeding once a complaint for forfeiture has been filed is without merit. The City argues that, once the Circuit Court's jurisdiction is invoked and exists over the property upon filing of a complaint for forfeiture, the lienholder is required to obtain a court order in order to secure release of the property. The City relies on a line of cases that have elaborated on the jurisdiction and standard of review in forfeiture cases. *See, e.g., State v. One 1976 Dodge Motor Vehicle*, 65 Md.App. 482, 501 A.2d 103 (1985); *Prince George's County v. One 1969 Opel*, 267 Md. 491, 298 A.2d 168 (1973). The City relies also on § 12–401, which provides:

In a proceeding under this title, a court

---

12. Under the City's reading of the statute, the lienholder would be forced to make an unusual strategic decision. If the lienholder anticipated that the towing and storage fees would exceed the court costs, it would be advantageous to allow the full forfeiture hearing to proceed and pay the court costs. On the other hand, if the lienholder thought that the court costs would exceed the towing and storage fees, the lienholder would proceed under the expedited process of § 12–501. Absent express language to the contrary, we do not think the Legislature intended to have a lienholder engage in such a guessing game regarding which process would enable it to obtain the vehicle with the least expense.

(1) may grant requests for mitigation or remission of forfeiture or take other action that protects the rights of innocent persons, is consistent with this title, and is in the interest of justice;

(2) may resolve claims arising under this title; and

(3) may take appropriate measures to safeguard and maintain property forfeited under this title pending the disposition of the property.

The City contends that once the trial court obtains in rem jurisdiction over the property, the court exercises continuing jurisdiction over the property until final judgment, dismissal, or the taking of an interlocutory appeal. Its argument, however, ignores § 12–203, which states that seized property "is in the custody of the seizing authority, subject only to the orders, judgments, and decrees of the court or the official having jurisdiction over the property." In enacting the statutory scheme, the Legislature clearly contemplated that an official of the government would have jurisdiction over the property. In addition, this Court has held that a forfeiting authority may dispose of property without a court order. *See DeSantis v. State,* 384 Md. 656, 666, 866 A.2d 143, 149 (2005) (stating, "we have an example of an official who may surrender property seized, and take it out of the custody of the seizing agency, without receiving permission from a court. . . . There is . . . no mention of a court order to validate the surrender of property. These provisions would seem to defy petitioner's contention that a court order is necessary for the seizing agency to lawfully relinquish custody of the property.").

The City's argument also fails as a matter of policy. The Legislature's intent in enacting the predecessor to § 12–501 was to provide an expedited process for lienholders to obtain seized property without going through a court proceeding. *See* 1988 Senate Judicial Proceedings Bill Analysis, Senate Bill 385 ("The purpose of this bill is to allow a lender to realize his collateral if the underlying obligation is in default, without waiting for the completion of the forfeiture."). In this case, as in most vehicle forfeiture cases, the first notice that the

lienholder receives that a vehicle has been seized is a summons and complaint for forfeiture served on the lienholder pursuant to § 12–305(b). The first notice of the seizure is also notice of the initiation of forfeiture proceedings. If we were to follow the City's reasoning, the expedited process under § 12–501 would be available to the lienholder only in the rare circumstance where the lienholder somehow obtained notice of the seizure prior to being served with process. This would conflict with the Legislature's intent to enable lienholders to obtain the seized property without a court proceeding.

We hold that, absent evidence of fraud or collusion between the lienholder and the vehicle owner(s), or the lienholder's prior knowledge of the illegal activities giving rise to the seizure, a lienholder is not required to pay towing and storage costs (or obtain a court order) as a condition precedent to the release of the seized property under § 12–501.[13]

**ORDER OF 29 AUGUST 2006 OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO ORDER RELEASE OF THE VEHICLE TO APPELLANT WITHOUT PRE PAYMENT OF TOWING OR STORAGE COSTS; COSTS TO BE PAID BY APPELLEE.**

---

**13.** We agree with WFS's concession, made at oral argument, that a seizing authority may require the person taking the vehicle from the impound lot to show proper identification and documentation indicating that the person is an authorized agent of the lienholder. Section 12–203(a)(1) states that seized property "is in the custody of the seizing authority...." As custodian of the property, the seizing authority may make an independent judgment as to whether the lienholder complied with the requirements enumerated in § 12–501 prior to release and take reasonable measures to ensure that the property is released to the appropriate party. If the forfeiting authority determines that the lienholder is not entitled to release of the property, then judicial intervention may be necessary.