959 A.2d 795

Craig B. CHESEK and Gregory J. Maddalone

v.

Adrienne A. JONES.

No. 117, Sept. Term, 2007.

Court of Appeals of Maryland.

Nov. 6, 2008.

J. Donald Braden (Foster, Braden & Thompson, LLP, Stevensville), on brief, for appellants/cross-appellees.

Dan Friedman, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Kathryn R. Rowe, Bonnie Kirkland and Sandra B. Brantley, Asst. Attys. Gen., Annapolis), on brief, for appellee/cross-appellant.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, IRMA S. RAKER (Retired, specially assigned), and DALE R. CATHELL (Retired, specially assigned), JJ.

IRMA S. RAKER, J., Retired, Specially Assigned.

The question presented in these consolidated cases[1] is whether a Special Committee, formed by the Legislative Policy Committee pursuant to Maryland Code (1984, 2004 Repl. Vol.), § 2–407 of the State Government Article, possesses subpoena power in the course of its duties. Appellants Craig Chesek and Gregory Maddalone challenge the authority of the Special Committee to subpoena and compel testimony. Appellee Adrienne Jones, co-chair of the Special Committee, argues that the subpoena action was valid. We shall hold that the provision granting the Legislative Policy Committee the authority to appoint a special committee in § 2–407(b)(3) of the State Government Article[2] necessarily carries with it the implied power to delegate subpoena power.

## I.

### A.

The Legislative Policy Committee is a bi-partisan committee of the Maryland General Assembly established by statute under § § 2–401 to 410. Pursuant to subsection 2–407(a), the purpose of the Legislative Policy Committee is to fulfill the following functions:

"(a) In general.—The Committee has the following functions:

(1) to review the work of the standing committees;

---

**1.** The cases against Chesek and Maddalone were consolidated in the Circuit Court for Baltimore County on October 26, 2006.

**2.** Unless otherwise noted, all subsequent statutory references herein shall be to the State Government Article of Maryland Code (1984, 2004 Repl. Vol.).

(2) to collect information about the government and general welfare of the State;

(3) to study the operation of and recommend changes in the Constitution, statutes, and common law of the State;

(4) to study the rules and procedures of the Senate and the House and recommend changes that would improve and expedite the consideration of legislation by the General Assembly;

(5) to coordinate and supervise generally the work of the General Assembly when it is not in session;

(6) to prepare or endorse a legislative program that includes the bills, resolutions, or other recommendations of the Committee that are to be presented to the General Assembly at its next session; and

(7) to carry out its powers and duties under the Maryland Program Evaluation Act."

To carry out the expansive duties with which the Legislative Policy Committee is entrusted under § 2–407(a), the Legislative Policy Committee is granted extensive powers under § 2–407(b), including the power to appoint a special committee under section 2–407(b)(3). The power of the Legislative Policy Committee is set forth as follows:

"(b) Powers and duties.—To carry out its functions, the Committee:

(1) shall receive, from any source, suggestions for legislation or investigation;

(2) may hold a hearing on any matter;

(3) *may appoint a special committee;*

(4) may refer a matter for study and report to any of its special committees or any committee of the General Assembly;

(5) shall consider the reports of standing, statutory, and special committees;

(6) may have any bill or resolution prepared to carry out its recommendations; and

(7) when the General Assembly is not in session:

(i) may accept a gift or grant of money ...; and

(ii) may spend the money for that purpose, in accordance with the State budget."

§ 2–407(b) (emphasis added).[3]

The Legislative Policy Committee may compel testimony, depose witnesses, and issue subpoenas under § 2–408, and may enforce compliance with such subpoenas by petitioning the circuit court. The powers granted in section 2–408(a) are set forth as follows:

"(a) Authorized.—In carrying out any of its functions or powers, the Committee may:

(1) issue subpoenas;

(2) compel the attendance of witnesses;

(3) compel the production of any papers, books, accounts, documents, and testimony;

(4) administer oaths; and

(5) cause the depositions of witnesses, who reside in or outside of the State, to be taken in the manner provided by law for taking depositions in a civil case."

Section 2–408(b) then provides for enforcement of the subpoena power in the circuit courts of Maryland.[4]

---

**3.** Effective October 1, 2007, the statute was amended to expressly provide that the Legislative Policy Committee could delegate subpoena power to a special committee. Section 2–407(b)(3) now reads as follows:

"(3) [The Committee] may appoint a special committee and delegate to that committee the authority specified in § 2–408 (subpoena power and circuit court enforcement) of this subtitle."

**4.** Section 2–408(b), which provides for the enforcement of subpoena power listed in 2–408(a), states as follows:

"(b) Enforcement.—If a person fails to comply with a subpoena issued under this section or fails to testify on any matter on which the person lawfully may be interrogated, on petition of a member of the Committee, a circuit court may pass an order directing compliance with the subpoena or compelling testimony and may enforce the order by proceedings for contempt."

B.

In 2005, the Maryland General Assembly, through the Legislative Policy Committee, began an investigation into the alleged wrongful political firings of employees within various state agencies during Governor Ehrlich's administration. In June 2005, the Legislative Policy Committee created a twelve-member Special Committee on State Employees' Rights and Protections to examine procedures, practices, and standards pertaining to the involuntary separation of state employees. The Legislative Policy Committee tasked the Special Committee with investigating:

"1. (a) Whether Maryland law affords sufficient protection for State personnel against involuntary separations for illegal or unconstitutional reasons; and

(b) Whether the government structure and procedures for decision making with respect to involuntary separations sufficiently protect State personnel from illegal or unconstitutional actions;

"2. (a) Whether the manner in which Administrations have determined the subjects of involuntary separations and effected such separations is fundamentally fair and consistent with best practices for personnel management; and

(b) What effect involuntary separations have on the overall quality and professional standards of the State government workforce; and

"3. Whether additional statutory protections are needed to safeguard the rights of state personnel . . . ."

Legis. Policy Comm. Res. (Md. 2005). In the resolution establishing the Special Committee, the Legislative Policy Committee expressly delegated all of its powers under § 2–408, stating in relevant part as follows:

"[B]e it further resolved . . . That the Special Committee is delegated the powers of the Legislative Policy Committee (LPC) under § 2–408 of the State Government Article."

*Id.* The powers delegated under § 2–408 include the Legislative Policy Committee's subpoena power, as listed in 2–408(a).

The Special Committee adopted rules, held hearings, conducted briefings, and collected information related to employee separations occurring during the period from 1995 to 2005. To assist in collecting information, the Special Committee requested that the Ehrlich administration produce certain documents. The administration and various executive agencies failed to comply fully with the document requests and thus the Special Committee approved a plan to subpoena certain witnesses, including appellants Maddalone and Chesek.[5] Maddalone was an employee of the Maryland Department of Transportation and was alleged to have carried out a series of political firings at that department. Chesek was an employee at the Public Service Commission and was alleged to have been involved with political firings within the Commission and other State agencies.

On May 1, 2006, subpoenas were served on Chesek and Maddalone ordering them to appear before the Special Committee on May 11, 2006, and to testify regarding State employees' terminations and separation procedures. Appellants, with counsel, appeared before the Special Committee as ordered. During their respective testimony, Maddalone and Chesek refused to answer certain questions, claiming their appearance was voluntary and that they were permitted to refuse to answer questions at their own discretion. Maddalone was sworn in and discussed his involvement in evaluating employees at the Maryland Department of Transportation and making firing recommendations as well as maintaining a database related to the firings. He refused, however, to answer ques-

---

5. The Special Committee voted to extend its existence on January 30, 2006 in order to provide time to obtain testimony from Chesek and Maddalone as well as obtain documents that had not yet been produced. In August 2006, the Special Committee voted that it would extend its existence until the latter of September 1, 2006 or ten days after it received the testimony requested of appellants. On October 30, 2006, the Special Committee submitted its final report to the Legislative Policy Committee, finding that the Ehrlich administration had fired State employees in ways that were illegal or arbitrary, often involving political affiliation, and recommending changes to State law and regulations to clarify State law and add protection for certain State employees.

tions about who directed him to create the database or whether he was paying for private counsel. Chesek was sworn in and testified but refused to answer nearly a dozen questions related to alleged political firings within the Public Service Commission and the Department of Natural Resources.

On May 22, 2006, the Special Committee voted to request the Circuit Court for Baltimore County to compel the appellants' testimony. On June 1, 2006, Delegate Adrienne Jones, as co-chairperson of the Special Committee, filed a Petition for Order to Compel Testimony and a Motion for Summary Judgment in the Circuit Court for Baltimore County. Appellants filed a motion to dismiss and a cross-motion for summary judgment.

On October 2, 2007, the Circuit Court granted Jones' motion for summary judgment against Chesek in its entirety, requiring him to answer all of the Special Committee's previously asked questions. With respect to Maddalone, the court granted Jones' motion for summary judgment in part and denied it in part. The court ruled that Maddalone did not have to answer the Special Committee's questions regarding payment of his attorney's fees, but that he did have to respond to questions regarding a state employee database.[6]

▮▮▮ Appellants noted a timely appeal to the Court of Special Appeals challenging the order of the Circuit Court requiring them to answer certain questions posed by the Special Committee. Appellee filed a cross-appeal to challenge the ruling on questions relating to the payment of attorney's fees. In December 2007, appellee Jones filed a petition for a writ of certiorari with this Court. We granted certiorari to answer the following questions: [7]

---

6. The Memorandum Opinion and Order in the Circuit Court for Baltimore County does not set out any reasoning behind the decision as to summary judgment. The record does not contain a hearing transcript to illuminate the trial court's reasoning.

7. Because we shall hold that the Legislative Policy Committee had authority to delegate its subpoena power to the Special Committee, we need not address appellee's questions 2 and 3, regarding whether the

"1. Could the Legislative Policy Committee have delegated its statutory subpoena power and investigatory powers to a 'special committee' created pursuant to § 2–407(b)(3) of the State Government Article?

"2. Where the respondent-witnesses made no objection before the Special Committee, have they waived objections to compelled testimony based on an alleged failure of the Committee to follow its rules and there alleged 'voluntary' appearance before the Committee?

"3. Can the respondent-witnesses assert that they are volunteers before the committee when they were served with a valid subpoena, appeared before the Committee and took the oath without qualification?

"4. Do the respondent-witnesses have a privilege to refuse to discuss the personnel matters of specific employees or former employees before a committee investigating the alleged illegal and improper firing of State employees?

"5. May the attorney-client privilege be asserted before a legislative investigatory committee and, if it can, does the privilege prevent the Special Committee from inquiring, for purposes of determining undue influence and credibility, who was paying the respondent-witnesses' attorney fees?"

*Chesek v. Jones*, 402 Md. 623, 938 A.2d 825 (2008).[8]

## II.

Appellants Chesek and Maddalone assert that the Circuit Court for Baltimore County lacks the jurisdiction to enforce

---

appellants waived any objection to the subpoena or could assert that they were appearing voluntarily before the Special Committee. In addition, we will not address question 4 regarding a hypothetical privilege where both parties failed to brief the issue and failed to address it at oral argument. Maryland Rule 8–504(a)(5) requires a party to present "argument in support of the party's position." We have held consistently "that a question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review." *Health Serv. Cost Rev. v. Lutheran Hosp.*, 298 Md. 651, 664, 472 A.2d 55, 61 (1984).

**8.** On April 20, 2008, appellants filed a motion to strike portions of the appendix to appellee's brief, arguing that certain documents were not

the subpoenas of the Special Committee. More specifically, appellants maintain that the Special Committee did not have the power to subpoena appellants' testimony. Appellants recognize that the Legislative Policy Committee has the power to subpoena witnesses, but contend that the Legislative Policy Committee does not have the legal authority to delegate its subpoena power. Appellants argue that the Legislature's later amendment of § 2–407(b) expressly included the delegation of subpoena power to a special committee, but that under the former statute, in effect when the subpoenas for Chesek and Maddalone took place, no such power was expressly given and therefore should not be implied.

Appellee Adrienne Jones contends that Chesek and Maddalone have waived any objection to the subpoenas by complying with them and by failing to file a motion to quash. Appellee alleges that in creating the Special Committee pursuant to § 2–407(b)(3), the Legislative Policy Committee effectively delegated its subpoena power. Jones argues that the Legislative Policy Committee holds broad powers to carry out its statutory commissioned function and further assert that its subpoena power was necessarily delegated because the Special Committee created in this instance was a subcommittee of the whole Legislative Policy Committee. In support of this contention, appellee notes an opinion of the Maryland Attorney General from 1951 that the Legislative Council, the predecessor to the Legislative Policy Committee, had authority to appoint a subcommittee to carry out investigations. 36 Op. Att'y Gen. 168, 170 (1951). Appellee also points to federal law in support of the ability to delegate subpoena power. Finally, appellee argues that the legislative intent of the amendment to § 2–407(b)(3) was not to create new authority, but to clarify

part of the record and should not be included before this Court as part of the record extract. Maryland Rule 8–501 governs the production of the record extract and Rule 8–501(e) allows an appellee to include in an appendix any additional part of the record that appellee believes is material. Appellee asserts that the documents at issue are either part of the record below or are official public documents to which this court may take judicial notice in its discretion according to Md. Rule 5–201(c). We agree with appellee and deny appellants' motion.

the existing authority of the Legislative Policy Committee to delegate subpoena power to any committees it creates. Appellee also argues that the source of the payment of attorney's fees is not privileged.

## III.

■■■■ We review a trial court's grant of a motion for summary judgment *de novo. Dashiell v. Meeks,* 396 Md. 149, 163, 913 A.2d 10, 18 (2006). "In considering a trial court's grant of a motion for summary judgment, this Court reviews the record in the light most favorable to the non-moving party." *Anderson v. Council of Unit Owners of the Gables on Tuckerman Condominium,* 404 Md. 560, 570, 948 A.2d 11, 18 (2008); *Rhoads v. Sommer,* 401 Md. 131, 148, 931 A.2d 508, 518 (2007) ("We review the record in the light most favorable to the non-moving party and construe any reasonable inferences that may be drawn from the facts against the moving party"). In the absence of a genuine dispute of material fact, we determine whether the trial court's grant of summary judgment was correct as a matter of law. *See* Maryland Rule 2–501(f); *Anderson, supra,* 404 Md. at 571, 948 A.2d at 18.

■■■■ The question in this case turns on whether a special committee, appointed by the Legislative Policy Committee under the authority of § 2–407(b)(3), has the same power to issue subpoenas as that of the Legislative Policy Committee under § 2–408(a). In interpreting a statutory provision, as we have often indicated, "[t]he cardinal rule of statutory interpretation is to ascertain and effectuate the intention of the legislature." *WFS Financial, Inc. v. Mayor and City Council of Baltimore,* 402 Md. 1, 13, 935 A.2d 385, 392 (2007). "In statutory interpretation, the court's primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision." *Anderson, supra,* 404 Md. at 571, 948 A.2d at 18.

"The starting point in statutory interpretation is with an examination of the language of the statute. If the words of the statute, construed according to their common and every-

day meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written."

*WFS, supra,* 402 Md. at 13, 935 A.2d at 392 (quoting *Jones v. State,* 336 Md. 255, 261, 647 A.2d 1204, 1206–07 (1994)). The statutory language is not read in isolation, but in the full context in which it appears, and "in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127 (1989).

■ Although this Court will neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, *see, e.g., Stachowski v. Sysco,* 402 Md. 506, 516, 937 A.2d 195, 200 (2007), a necessary corollary to that principle is "that which necessarily is implied in the statute is as much a part of it as that which is expressed." *Stanford v. Md. Police Training,* 346 Md. 374, 379, 697 A.2d 424, 426 (1997) (emphasis in original); *see also Soper v. Montgomery County,* 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982); *Guardian Life Ins. v. Ins. Comm'r,* 293 Md. 629, 643, 446 A.2d 1140, 1148 (1982); *Chillum–Adelphi v. Board,* 247 Md. 373, 377, 231 A.2d 60, 62 (1967); *Restivo v. Princeton Constr. Co.,* 223 Md. 516, 525, 165 A.2d 766, 771 (1960).

We read within the provision of § 2–407(b)(3), which grants the Legislative Policy Committee the power to create a special committee, the implied delegation of the Legislative Policy Committee's powers, including subpoena power, to fulfill its larger tasks as set forth in § 2–407(a).

■ First, we note that the investigative power of the Legislature is both inherent and expressly provided for by statute. The principle is long-standing that a legislature is vested with all investigative power necessary to exercise its function properly. *See, e.g., McGrain v. Daugherty,* 273 U.S. 135, 174, 47 S.Ct. 319, 328, 71 L.Ed. 580 (1927) ("[T]he power of inquiry—with the process to enforce it—is an essential and appropriate auxiliary to the legislative function"); J. Michael

McWilliams, *The Investigative Power of the General Assembly, in* CONSTITUTIONAL CONVENTION COMMISSION OF MARYLAND, CONSTITUTIONAL REVISION STUDY DOCUMENTS 125 (1968) ("Under the American Constitutions, the legislature possesses not only such powers as are expressly granted to it but also such auxiliary powers as are necessary and proper to make the express powers effective"). Subpoena power is a necessary and integral part of the general investigative power of the Legislature. *McGrain, supra,* 273 U.S. at 165, 47 S.Ct. at 325 ("[S]tate courts quite generally have held that the power to legislate carries with it by necessary implication ample authority to obtain information needed in the rightful exercise of that power, and to employ compulsory process for the purpose"); *see also Mason's Manual of Legislative Procedure,* § 795(1) to (5) (2000) (adopted as the official supplement to the rules of the Maryland General Assembly pursuant to Rule 117, Rules of the Senate of Maryland (Reg. Session 2008) and Rules of the Maryland House of Delegates (Reg. Session 2006)). The purpose behind implying subpoena power is as follows:

"A legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change; and where the legislative body does not itself possess the requisite information—which not infrequently is true—recourse must be had to others who do possess it .... some means of compulsion are essential to obtain what is needed."

*McGrain, supra,* 273 U.S. at 175, 47 S.Ct. at 329.

In addition, the investigative power is conferred upon the General Assembly expressly in the Maryland Constitution, article III, section 24, which provides in relevant part as follows:

"The House of delegates may inquire, on the oath of witnesses, into all complaints, grievances, and offenses.... They may call for all public, or official papers and records, and send for persons, whom they may judge necessary in the course of their inquiries...."

The Legislative Policy Committee, in turn, was granted broad investigative powers under § 2–407(b), and concurrent sub-

poena power in § 2–408(a), in order to fulfill its broad purpose. As listed in § 2–407(a), the mandate of the Legislative Policy Committee includes such broad functions as to, *inter alia*, "collect information about the government and general welfare of the State," and "study the operation of and recommend changes in the Constitution, statutes, and common law of the State." The ability to create a special committee under § 2–407(b)(3), and to refer matters "for study and report to any of its special committees" under § 2–407(b)(4), is in keeping with the broad scope of power and duties vested in the Legislative Policy Committee. Viewing § 2–407(b)(3) and the power to create a special committee within the larger context of the statutory scheme granting investigative powers to the Legislative Policy Committee, we find that the subpoena power granted to the Legislative Policy Committee under § 2–408(a) must necessarily be conferred upon any special committee tasked with an investigation by the Legislative Policy Committee. Without the full force of investigative powers, the Special Committee would have been unable to fulfill its mandate, that of determining whether Maryland law and governmental procedures provide sufficient protection against involuntary separations, whether administrations have effected such separations in a fundamentally fair and consistent manner, the effect involuntary separations have had on the State government workforce, and what additional protections are needed to safeguard State personnel from political firings. *See* Legis. Policy Comm. Res. (2005).

Our reading of the statute is consistent with federal authority regarding subcommittee investigative power. *See generally Nixon v. United States,* 506 U.S. 224, 250–51, 113 S.Ct. 732, 746, 122 L.Ed.2d 1 (1993) (White, J., concurring) (stating that the ability of Congress to delegate fact-finding and investigations into impeachment to committees is supported by textual and historical evidence); *United States v. Custodian of Records, Southwestern Fertility Ctr.,* 743 F.Supp. 783, 786–87 (W.D.Okla.1990) (finding the Inspector General could delegate subpoena power even where the statute is silent as to the power to delegate, because where the grant of authority, power, and duties of the office is so broad, the power to

delegate is implied). In addition, other states have similarly found that subpoena power may be implied. *See, e.g., In re Shain,* 92 N.J. 524, 457 A.2d 828, 832 (1983) (finding that while no statute granted the City Council the power to issue subpoenas, "[n]o specific statutory grant is necessary to vest a legislative body with subpoena power .... such authority may be fairly implied from a legislative scheme without being expressly stated within the four corners of a statute").

Our reasoning is supported by the Legislature's subsequent amendment of § 2–407(b)(3) to expressly include the Legislative Policy Committee's ability to delegate its subpoena power to a special committee. While appellants argue that the failure to expressly provide for delegation in the statute prior to the 2007 amendment indicates that no such delegation power existed previously, legislative intent suggests the contrary. Although a subsequent legislative amendment of a statute is not controlling as to the meaning of the prior law, nevertheless, subsequent legislation can be considered helpful to determine legislative intent. *Reier v. State, Dept. of Assessments and Taxation,* 397 Md. 2, 35, 915 A.2d 970, 990 (2007) (citations and quotation omitted); *see also Swarthmore Co. v. Comptroller,* 38 Md.App. 366, 373, 381 A.2d 27, 30 (1977) ("[A] subsequent 'statute purporting to declare the intent of an earlier one might be of great weight in assisting a court when in doubt'") (quoting *United States v. Stafoff,* 260 U.S. 477, 480, 43 S.Ct. 197, 199, 67 L.Ed. 358 (1923)). As for § 2–407(b)(3), the legislative history of the 2007 amendment reflects that the purpose of S.B. 384, which was passed as 2007 Md. Laws Chap. 546, was *"clarifying* that the Legislative Policy Committee may delegate its authority to issue subpoenas ... to any committee created by the [Legislative Policy Committee]." (emphasis added). In addition, the record reflects that the Attorney General's Office testified before the House Rules Committee that the purpose was to resolve any disputes over subpoenas and witnesses' refusal to answer questions before certain legislative committees, and that the legislation merely codifies the ability of the Legislative Policy Committee to delegate its subpoena power.

 The testimony of the Attorney General's Office regarding the 2007 amendment is supported by long-standing Attorney General opinions on subcommittee subpoena power in Maryland. In 1951, a published opinion by the Attorney General indicated that the Legislative Council, the predecessor to the Legislative Policy Committee, could appoint "a subcommittee of the Council itself to initiate and carry on any investigation." 36 Op. Att'y Gen. 168, 170 (1951). We have said that courts are not bound by an Attorney General's Opinion, but that "when the meaning of legislative language is not entirely clear, such legal interpretation should be given great consideration in determining the legislative intention." *State v. Crescent Cities Jaycees*, 330 Md. 460, 470, 624 A.2d 955, 960 (1993); *see also Read Drug & Chem. Co. v. Claypoole*, 165 Md. 250, 257, 166 A. 742, 745 (1933). The Legislature is presumed to be aware of the Attorney General's statutory interpretation and, in the absence of enacting any change to the statutory language, to acquiesce in the Attorney General's construction. *See Claypoole, supra*, 165 Md. at 257–58, 166 A. at 742. The prior Attorney General opinion, with respect to subcommittee investigative powers, supports our interpretation that the ability to delegate subpoena power is implied.

 As a final matter, we address appellee's contention that appellant Maddalone should be required to answer questions regarding the source of the payment of his attorney's fees. We have stated that the "overwhelming authority holds that the attorney-client privilege is generally not violated by requiring the disclosure of the payment of attorney's fees and expenses." *In re Criminal Investigation No. 1/242Q*, 326 Md. 1, 7, 602 A.2d 1220 (1992). Ordinarily fee arrangements are not within the scope of attorney-client privilege because revealing such information generally does not expose confidential communication between the attorney and client. *Id.* Maddalone has not asserted any exception to the general rule regarding fees and the attorney-client privilege and we therefore do not address it. Accordingly, we hold that the Circuit Court erred in holding that Maddalone was not required to

answer questions with respect to the source of the payment of his attorney's fees.

For the reasons set forth above, we hold that the Circuit Court for Baltimore County properly granted summary judgment in favor of appellee and the Special Committee, but that on the basis of the record before us, appellant Maddalone is required to answer Special Committee questions regarding the source of the payment of his attorney's fees.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANTS.*

MURPHY, J., Concurs.

Concurring Opinion by MURPHY, J.

I agree that the appellee was entitled to summary judgment in her favor on the issue of whether the Special Committee possesses subpoena power. I also agree that appellant Maddalone was not entitled to summary judgment in his favor on the issue of whether he was required to answer the Committee's questions regarding the source of the payment of his attorney's fees. In my opinion, because neither party was entitled to summary judgment on this issue, the case at bar should be remanded for further proceedings at which Maddalone and his attorney will have the opportunity to address the issue of "whether the revelation of the identity of the fee payer along with information regarding the fee arrangement would reveal a confidential communication between [Maddalone's counsel] and the fee payer." *In re Grand Jury Proceeding, Cherney,* 898 F.2d 565, 567 (7th Cir.1990).

In *Cherney,* the United States District Court for the Southern District of Illinois granted a motion to quash a Grand Jury subpoena that had been issued to David Cherney, an attorney who argued that the attorney-client privilege protected the identity of the person who paid legal fees to him on behalf of another person. While affirming that ruling, the United States Court of Appeals for the Seventh Circuit stated:

[T]he government is correct in its charge that the privilege is limited to confidential communications and the decision to quash the subpoena in the instant case cannot be supported solely by the determination that disclosure would incriminate the fee payer. **The proper question is whether the revelation of the identity of the fee payer along with information regarding the fee arrangement would reveal a confidential communication between Cherney and the fee payer.**

\* \* \*

The government argues that, regardless of the formation of this relationship, information concerning the payment of fees simply cannot be considered a confidential communication. In the circumstances of this case, we must disagree. **A client's motive for seeking legal advice is undeniably a confidential communication.** *See, e.g., Matter of Walsh,* 623 F.2d at 494 n. 6. **Accordingly, the privilege protects an unknown client's identity where its disclosure would reveal a client's motive for seeking legal advice.** *Tillotson v. Boughner,* 350 F.2d 663, 666 (7th Cir.1965); *Matter of Witnesses,* 729 F.2d at 493.

*Id.* at 568 (emphasis added).

In *Tillotson v. Boughner,* 350 F.2d 663 (7th Cir.1965), while reversing an order holding Jackson L. Boughner, Esq. in civil contempt for his refusal to identify the client who retained him to deliver a cashier's check to the Internal Revenue Service, the United States Court of Appeals for the Seventh Circuit stated:

The disclosure of the identity of the client in the instant case would lead ultimately to disclosure of the taxpayer's motive for seeking legal advice. That this motive of the taxpayer is subject to the privilege is confirmed by Wigmore wherein he states "A communication as to \* \* \* the ultimate motive of the litigation, is equally protected with others, so far as any policy of privilege is concerned." 8 Wigmore, Evidence, § 2313, 609–610.

Considering the peculiar facts in this case, we subscribe to the statement in 97 C.J.S. Witnesses § 283, at page 803:

" * * * [A]n attorney may not be compelled, at the instance of a hostile litigant, to disclose his retainer or the nature of the transaction to which it related, when such information could be made the basis of a suit against his client."

*Id.* at 666.

A remand for further proceedings is not inconsistent with the proposition that "[t]here are good reasons why fee arrangements should not **generally** be protected by the attorney-client privilege." *In re Criminal Investigation No. 1/242Q,* 326 Md. 1, 7, 602 A.2d 1220, 1223 (1992) (emphasis supplied). Because Maddalone was the prevailing party on the "payment of attorney's fees" issue in the circuit court, he should not be denied the right to have the circuit court make a fact-specific determination of "whether the revelation of the identity of the fee payer along with information regarding the fee arrangement would reveal a confidential communication between [Maddalone's counsel] and the fee payer."