990 A.2d 629

**Jerry Adam HELMS, Jr.**

v.

**STATE of Maryland.**

**No. 2917 Sept.Term, 2008.**

Court of Special Appeals of Maryland.

March 2, 2010.

Jerry A. Helms, Jr., pro se.

Mary Ann Ince (Douglas Gansler, Atty. Gen., on brief), Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, SALMON,*, and CHARLES E. MOYLAN, JR. (Retired, specially assigned), JJ.

---

* James P. Salmon, J., participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

JAMES R. EYLER, Judge.

Jerry A. Helms, appellant, appeals from an order entered by the Circuit Court for Garrett County, denying his "Motion for Reduction of Sentence by 1/4" under Maryland Code (2008 Repl.Vol.), § 11–605 of the Correctional Services Article ("CS"). In his brief, appellant, who is self-represented, contends the circuit court erred by (1) denying the motion under § 11–605 without "the benefit of an essential hearing," and (2) not providing an explanation for the denial.[1]

In the exercise of our discretion, we shall address the applicability of § 11–605, an issue not raised by appellant and not raised in circuit court. We conclude that the statute is applicable only to inmates housed in local correctional facilities, and thus, not to appellant, who is incarcerated in a State correctional facility. We shall also address appellant's contentions, which lack merit. The plain language of § 11–605 grants the circuit court discretion in determining whether to allow a diminution of an inmate's sentence and does not require it to hold a hearing or provide an explanation for its ruling. For these reasons, explained below, we shall affirm the ruling of the circuit court.

## Factual and Procedural Background

On December 11, 1997, appellant appeared before the Circuit Court for Garrett County, entering guilty and Alford pleas to charges in six different cases. He was convicted and, according to appellant, sentenced to eighty-five years in prison.

More than eleven years after his sentencing, on January 5, 2009, appellant filed a "Motion for Reduction of Sentence by 1/4," citing Maryland Code (1957), Article 27, § 645N. That section was repealed and recodified, without substantive

---

1. We distilled these questions from appellant's brief. Appellant's "Question Presented" only asks whether the circuit court erred by denying him "an essential hearing" prior to denying his motion. Nevertheless, appellant states, throughout his brief, that the circuit court also erred by failing to provide an explanation for the denial.

change, in Maryland Code (2008 Repl.Vol.), § 11–605 of the Correctional Services Article.[2] Section 11–605 is titled "Diminution credits" and provides:

> If the committing court determines that an inmate's conduct, diligence, and general attitude merit a diminution of sentence, the court may allow diminution of one-fourth of the inmate's term of confinement.

To demonstrate that he qualified for the diminution credits under the language of § 11–605, appellant also appended various definitions to his motion, including "Inmate," "State Correctional Facility," "Committing Court," and "Term of Confinement."[3]

In his motion, appellant argued that he "satisfied the requirements of § 11–605" because he had (1) "an [sic] good conduct history while being confined in the State Facilities," (2) "maintained a job while in prison and most of the jobs have been preferred jobs, which are for the best inmates with the best skills," and (3) "been able to stay away from gangs and drugs while in prison." Appellant requested a hearing on the motion.

On January 8, 2009, the State filed its "Answer to Motion for Reduction of Sentence by 1/4." The State did not address appellant's conduct as an inmate, noting that it did not have the opportunity to review appellant's file in the Division of Correction. Instead, it argued that the language of § 11–605, particularly the word "may," grants a circuit court discretionary authority when considering an inmate's request for a diminution of his term of confinement. The State then described the nature of the six cases underpinning appellant's sentence, focusing on "two cases involving physical violence

---

2. In its answer to appellant's motion, the State noted that Art. 27, § 645N had been repealed and reenacted as § 11–605 without substantive change. Appellant cited to § 11–605 in his brief.

3. While he supplied a citation for the last term only, Art. 27, § 700A, it is apparent they were taken from former Article 27 of the Maryland Code. The State, in its answer to appellant's motion, noted the section "was substantially reenacted" in CS § 3–701.

and sexual abuse of a one-year old child" that now lives with "permanent injuries and disabilities—seizures, a deformed arm and vision impairment." The State concluded that "[w]hether [appellant] has conformed his conduct while incarcerated and held jobs within the prison system does not in the State's view balance the risk that [appellant] would pose to the most vulnerable individuals" if his term of confinement were reduced.

By order entered January 12, 2009, the circuit court, noting that it had "read and considered" the motion and the State's answer, denied the motion without a hearing or elaboration of reasons. This appeal followed.

## Contentions

As noted earlier, appellant contends the circuit court erred by (1) denying the motion under § 11–605 without "the benefit of an essential hearing," and (2) not providing an explanation for the denial.

The State counters, as it did in its answer in circuit court, that the plain language of § 11–605 grants the circuit court discretion in determining whether to allow a diminution of an inmate's sentence. The State also argues, for the first time, that appellant had no right to relief under § 11–605 because the statute applies to inmates incarcerated in local, and not State, correctional facilities.[4] We agree with the State.

---

4. Notwithstanding the State's failure to challenge the applicability of § 11–605 before the circuit court, we shall address the issue pursuant to Maryland Rule 8–131. The rule provides, in pertinent part:

(a) Generally. The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal.

Because the Rule employs the term "ordinarily," it "permits exceptions[,] and [appellate courts] have occasionally decided cases on issues not previously raised." *Taub v. State*, 296 Md. 439, 463 A.2d 819 (1983); *See also Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 383,

## Discussion

The resolution of appellant's claims involves statutory interpretation. In *WCI v. Geiger*, 371 Md. 125, 807 A.2d 32 (2002), the Court of Appeals stated:

> Repeatedly, we have emphasized that "the paramount object of statutory construction is the ascertainment and effectuation of the real intention of the Legislature." In seeking to ascertain legislative intent, we first look to the words of the statute, viewing them "in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood." "Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself to determine legislative intent." Nor may a court under those circumstances add or delete language so as to "reflect an intent not evidenced in that language," or construe the statute with " 'forced or subtle interpretations' that limit or extend its application."
>
> * * *
>
> We have acknowledged that in determining a statute's meaning, courts may consider the context in which a statute appears, including related statutes and, even when a statute is clear, its legislative history. We have cautioned, however, that this inquiry is "in the interest of completeness, to look at the purpose of the statute and compare the result obtained by use of its plain language with that which results when the purpose of the statute is taken into account." *Id.* That inquiry, in other words, . . . "is a confirmatory process;

893 A.2d 1067 (2006); *Jones v. State,* 379 Md. 704, 713–714, 843 A.2d 778 (2004); *Crown Oil & Wax Co. of Del., Inc. v. Glen Constr. Co. of Va., Inc.,* 320 Md. 546, 561, 578 A.2d 1184 (1990). Therefore, we shall consider whether § 11–605 is a potential source of relief to inmates incarcerated in State correctional facilities.

it is not undertaken to contradict the plain meaning of the statute."

*Id.* at 140–43, 807 A.2d 32 (citations omitted).

### 1. § 11–605 Does Not Apply to Inmates in State Correctional Facilities

■ We conclude that § 11–605 applies to inmates incarcerated in local, and not State, correctional facilities. The General Assembly expressly distinguishes between "Local Correctional Facilities" and "State Correctional Facilities" throughout the Correctional Services Article. A "Local correctional facility" is operated by "one or more counties" or "by a municipal corporation," CS § 1–101(j), whereas a "State Correctional Facility" is operated by the State or, more specifically, the Division of Correction. CS § 1–101(o)(1); CS § 9–103 (providing that a judge "shall sentence" an individual to the Division of Correction for an offense "for which a law requires the imprisonment be served at a specific State correctional facility.") The length of an inmate's sentence determines where the inmate is incarcerated. *See* CS §§ 9–104 and 9–105 (providing sentencing ranges for local and State correctional facilities, respectively). Although the language of § 11–605, considered alone, does not refer to either local or State correctional facilities, its restrictive applicability is clear by virtue of its location within the Code, corroborated by its legislative history. *See Jones v. State,* 311 Md. 398, 405, 535 A.2d 471 (1988) ("When construing a provision that is part of a single statutory scheme, the legislative intent must be gathered from the entire statute, rather than from only one part.")

Section 11–605 appears as part of Subtitle 6 within Title 11. Title 11 is captioned, "Local Correctional Facilities." *See Tidewater/Havre de Grace v. Mayor & City Council of Havre de Grace,* 337 Md. 338, 347, 653 A.2d 468 (1995) (stating "that the title of an act is relevant in ascertaining the legislative intent and purpose") (citations omitted). In addition, subtitle 6, the scope of which is expressly outlined in CS § 11–601, is applicable only to local correctional facilities. CS § 11–601 provides:

(a) *In general.*—Except as provided in subsection (b) of this section and Subtitle 7 of this title, this subtitle applies in all counties.

(b) *Montgomery County.*—This subtitle does not apply in Montgomery County.

The language of § 11–605's sister statutes in Subtitle 6 reinforces this reading, as their provisions are directed at local correctional facilities. *See, e.g.,* § 11–602 (titled "Employment" and providing, in part, that "[w]hen an individual is convicted of a crime and sentenced to a *local correctional facility,* the sentencing judge may allow the individual, to the extent possible, to continue the individual's regular employment . . . .") (emphasis added); § 11–603 (titled "Confinement` when not working" and providing that, "[u]nless the court directs otherwise, an inmate shall be confined in the *local correctional facility* when: (1) not employed; and (2) between periods of employment.") (emphasis added); § 11–607 (titled "Expenses of Managing Official," and providing that "[t]he managing official of a *local correctional facility* shall receive an extra expense of mileage allowance as the local governing body determines for additional services provided under this subtitle.") (emphasis added).

Reviewing, in the "interest of completeness," the legislative history of 11–605 and its surrounding provisions, we arrive at the same conclusion. *See Chesapeake Amusements, Inc. v. Riddle,* 363 Md. 16, 29, 766 A.2d 1036 (2001). The language of section § 11–605 is derived "without substantive change" from former Article 27, § 645N, which was originally enacted in 1959, along with §§ 645K to 645S, under the subtitle "Employment of Prisoners." *See* Ch. 601 of the Acts of 1959. At that time, the provisions applied "only in Harford and Anne Arundel County." Former Article 27, § 645S (predecessor to CS § 11–601). The stated purpose of the bill was

provision for the employment of prisoners held by Harford and Anne Arundel County during their detention, providing for their confinement when not employed, providing further for a diminution of their sentences, and relating generally to

the custody of prisoners in Harford and Anne Arundel County.

In 1998, the provisions were made applicable to almost all counties. See Ch. 508 of the Acts of 1998. In 1999, when the subtitle, along with other portions of Article 27, was recodified in the Correctional Services Article, its provisions applied to all counties, except Montgomery County. Ch. 54 of the Acts of 1999.

▮ We presume "[recodification] of statutes is ... for the purpose of clarity rather than change of meaning," *Comptroller of the Treasury v. Blanton,* 390 Md. 528, 539, 890 A.2d 279 (2006) (citations omitted), and the Revisor's note to § 11–601 indicates as much:

> The provisions of former Art. 27, §§ 645K through 645S, which are revised in this subtitle, set forth general rules governing work release for local correctional facilities. The provisions of former Art. 27, §§ 546T through 645 MM, which are revised in Subtitle 7 of this title, set forth rules governing work release and other alternatives to incarceration in particular counties. All of these provisions were in the same subtitle in former Art. 27, which was entitled "Employment of Prisoners". Subsection (a) of this section clarifies that the general provisions of this subtitle do not apply when there are conflicting provisions in Subtitle 7 of this title relating to work release and other alternatives to incarceration in particular counties.

Thus, the location of § 11–605 within the Code, corroborated by its legislative history, clearly indicates that the General Assembly intended for it to apply solely to local correctional facilities. Therefore, appellant, not being an inmate in a local correctional facility, had no statutory basis to petition the circuit court for diminution of his sentence under the statute.

### 2. *Failure to Properly Present Issue*

Even if the statute were applicable, appellant's contentions would fail. Maryland Rule 8–504(a)(7) requires that a brief contain, among other things, "[t]he citation and verbatim text

of all pertinent constitutional provisions, statutes, ordinances, rules, and regulations." Appellant contends that he was entitled to a hearing and an elaboration of reasons for denial, but fails to cite any authority supporting these contentions in his brief. It is not this Court's responsibility to do so in his stead. *See Mathis v. Hargrove*, 166 Md.App. 286, 318, 888 A.2d 377 (2005) (real estate broker did not cite authority for its argument that the contracting broker was an independent contractor, and thus, the argument would not be reviewed on appeal).

### 3. § 11–605 Does Not Require A Hearing or Explanation of Ruling

Even if properly before us, and assuming § 11–605 were applicable, the plain language grants the circuit court discretion in determining whether to allow a diminution of an inmate's sentence and does not require the circuit court to hold a hearing or give a detailed explanation for its ruling. Section 11–605 provides that "the court *may* allow diminution" (emphasis added). " 'May' is generally interpreted as permissive, in contrast with 'shall,' which is interpreted as mandatory." *Livesay v. Baltimore County*, 384 Md. 1, 17, 862 A.2d 33 (2004).

Moreover, attempting to read into the statute conditions precedent, like a required hearing, is contrary to the canon of statutory construction *inclusio unius est exclusio alterius. See WFS Fin., Inc. v. Mayor of Baltimore*, 402 Md. 1, 14, 935 A.2d 385 (2007) (" . . . Maryland has long accepted the doctrine of expressio (or inclusio) unius est exclusio alterius, or the expression of one thing is the exclusion of another.") (*quoting Chow v. State*, 393 Md. 431, 458, 903 A.2d 388 (2006) (citations omitted)). We note that the General Assembly requires an on-the-record hearing and decision under CS § 7–401 for parolees facing revocation of parole. *See also* CS § 7–502(b)(1) (affording inmates facing revocation of mandatory supervision the same due process rights that parolees have, including rights under § 7–401 to an on-the-record hearing and decision). If the General Assembly intended to impose similar conditions under § 11–605, the General Assembly

could have inserted such requirements. It chose not to do so. Therefore, the circuit court did not err in exercising its discretion and declining to do either.[5]

The Court is in receipt of a letter from appellant, dated January 13, 2010, in which he asks this Court to extend the time for filing a reply brief or, in the alternative, consider the contents of the letter. We have considered the contents of the letter, but it simply repeats appellant's contention that he was entitled to a hearing.

**ORDER DENYING MOTION FOR REDUCTION OF SENTENCE AFFIRMED. APPELLANT TO PAY COSTS.**

---

**5.** Appellant's characterization of the hearing denied to him as "essential" invites due process considerations; we need not opine on that issue, however, because we resolve the present case on non-constitutional grounds by holding that appellant has no right to relief under § 11–605. *See, e.g., Robinson v. State,* 404 Md. 208, 217, 946 A.2d 456 (2008) (noting, "it is this Court's established policy to decide a constitutional issue only when necessary"). (Footnote continued ...) In any event, the discretionary language in 11–605 does not trigger due process protections. *See, e.g., Reese v. Dep't of Health & Mental Hygiene,* 177 Md.App. 102, 157, 934 A.2d 1009 (2007) (stating that "discretionary statutory 'rights,' as compared to mandatory rights, do not create protected liberty or property interests under the Due Process clause.")